C. H. JANES, as Trustee, v. GEORGE E. WILKIN-
SON et al.

No. 37.

1. PUBLIC LANDS—*Railroad Grant—Prior Pre-emption Loca-
tion.* By an act approved July 23, 1866, congress granted to the
state of Kansas for the use of the St. Joseph & Denver City Rail-
road Company alternate sections of public lands, designated by
odd numbers, within a limit of 10 miles on each side of said road,
to which a right of pre-emption or homestead settlement had not
attached when the line of the road was definitely located. The
map of the route of the road was filed with the secretary of the
interior in March, 1870. Prior thereto, one K. had settled upon
and filed a declaratory statement under the pre-emption act for a
certain quarter-section of land situated within the limits of the
grant, and the same was a subsisting pre-emption settlement and
claim when said map was filed, but was soon after abandoned.
*Held,* That the land so settled upon was excepted from the grant,
and the railroad company was not legally entitled to a patent
therefor.

2. PATENT—*Validity.* A patent issued by the land department of
the government to said railroad company for lands excepted from
its grant because of such pre-emption claim was erroneously is-
sued. It was voidable at the instance of the United States, and
might have been set aside by a court of equity; but it was not
void, and conveyed the legal title, which would become absolute
when vested in an innocent purchaser.

3. —————— *Erroneously Issued—Relief in Equity.* Except as
against an innocent purchaser, one who has a superior right to
land, and who is entitled to the patent erroneously issued to an-
other through a mistake of law on the part of the officers of the
land department, may have relief in equity, and the legal title will
be decreed to be held in trust for him. But a naked possessor of
land, without higher claim of right, cannot question the validity
of a title which is only voidable.

4. ADVERSE POSSESSION—*Notice.* Open, notorious and exclusive
possession of real estate, under an apparent claim of title, is no-
tice to purchasers of whatever claim such possessor asserts, and
precludes any one from being an innocent purchaser as to him.

5. —————— *Invalid Tax Deed.* A tax deed is invalid and voidable
when issued without the publication of the final redemption no-
tice required by statute.

6. STATUTE OF LIMITATIONS—*Adverse Possession.* The statute of limitations does not run against the government; and exclusive possession of land the title to which is in the United States is not such adverse possession as can be made the basis of title.

MEMORANDUM.—Error from Washington district court; F. W. STURGES, judge. Action brought by C. H. Janes, as trustee, against George E. Wilkinson, P. J. Bean and L. J. Bean to foreclose a mortgage. Judgment for defendants. Plaintiff brings the case here. Reversed. The material facts are stated in the opinion herein, filed November 11, 1895.

*W. W. & W. F. Guthrie,* for plaintiff in error.

*F. A. Meckel,* and *Chas. Smith,* for defendants in error P. J. and L. J. Bean.

The opinion of the court was delivered by

GARVER, J.: C. H. Janes brought this action against George E. Wilkinson, P. J. Bean and L. J. Bean to foreclose a mortgage on a tract of land in Washington county, described as the north half of the northeast quarter of section 25, township 2, range 4 east, which was executed by the defendant Wilkinson to secure the payment of purchase-money to Janes, as trustee, on a sale and conveyance of the land to Wilkinson by E. N. Morrill. The defendant Wilkinson answered alleging want of title in Morrill, and a failure of consideration for the note and mortgage sued on. Bean filed an answer setting up as specific defenses : First, a denial that either the plaintiff or Wilkinson had any right, title or interest to or in the land ; second, title in P. J. Bean by virtue of a tax deed ; and third, adverse possession by him under a claim of title for more than 15 years prior to the commencement of the action. The plaintiff joined issue upon these an-

swers, which, upon trial, was determined in favor of the defendants, the court finding that no title to or interest in the land was conveyed by Morrill to Wilkinson; that the mortgage consequently was without consideration; and that the mere possession of the premises by Bean, without regard to any legal right or title in him, was a sufficient defense against any claim the plaintiff could make to the land. On the findings of fact, the court gave judgment for the defendants, which is assigned as error by the plaintiff.

The special findings of fact show that the land in controversy was situated within the 10-mile limit of the grant of land made for the use of the St. Joseph & Denver City Railroad Company by an act of congress approved July 23, 1866, entitled "An act for a grant of lands to the state of Kansas to aid in the construction of the Northern Kansas railroad and telegraph," which granted alternate sections designated by odd numbers within 10 miles on each side of the proposed road, but excepted all lands to which the right of homestead or pre-emption settlement had attached when the route of the road was definitely located; that the right of the company under the grant attached, if at all, to the land in controversy March 28, 1870, on which day the company filed with the secretary of the interior a map designating the route of the proposed road; that on March 15, 1870, L. J. Bean, then Lydia J. Kyle, one of the defendants, filed her declaratory statement under the pre-emption law in the local land office for the district in which the land was situated, alleging settlement on March 11, 1870, on the northeast quarter of section 25, township 2, range 4 east, including the land in question; that she continued to reside on and improve said land from March 11, 1870, until about

November 3, 1871, when she made a homestead entry on the south half of said quarter, and thereafter perfected such entry; that some time in 1872 the defendant P. J. Bean moved upon and took possession of the north half of said quarter-section, and from that time until the time of the trial of this case continued to occupy and improve the same; that on October 30, 1878, P. J. Bean made an entry under the timber-culture act for said tract of land, which was thereafter canceled by the commissioner of the general land office, but for what reason does not appear; that the land was awarded to the railroad company under the grant, and a patent therefor duly executed April 14, 1880, conveying the title of the United States to said company. By subsequent conveyances the title was vested in E. N. Morrill, who conveyed to Wilkinson. The court further found that the land was sold for taxes in 1886 for the unpaid taxes of 1885, on which sale a tax certificate was duly issued to the purchaser; that thereafter P. J. Bean obtained an assignment to himself of the certificate, and on September 9, 1889, took a tax deed therefor from the county clerk; and that no final redemption notice was published as required by law.

The trial court, without determining what, if any, interest P. J. Bean had in the land, other than mere possession, held that the patent issued to the railroad company was void and did not convey the title to the land; that no title or interest, consequently, was ever vested in the subsequent grantees; that the deed from Morrill to Wilkinson having conveyed no title, the consideration for the mortgage wholly failed; and that " said Bean, at the commencement of this action, before, and since, being in possession of said premises, and being made a party hereto, is entitled to show that whatever his claim or title is, even if that of

possession only, it is superior to any title or claim of plaintiff.''

In these conclusions we think the court erred. They are all based upon the erroneous assumption that the patent which was issued to the railroad company was absolutely void and conveyed no title. Under the facts as found, it is clear that the land was erroneously patented to the railroad company. It is equally clear that, if the timber-culture entry of Bean was canceled on the ground that it conflicted with the grant, such action on the part of the land department was also erroneous.   The right of the beneficiary under this grant must be determined as of the time when the map of the definite location of the line of the road was filed with the secretary of the interior, as required by the act.   In this case, that is found to have been March 28, 1870.   At that time, Lydia J. Kyle's right to pre-emption settlement had attached, and the land was thereby excepted from the grant.  (*Van Wyck v. Knevals,* 106 U. S. 360; *Railway Co. v. Dunmeyer,* 113 id. 629.)

Notwithstanding the fact that the land was thus excepted from the grant, it still continued to be a part of the public domain, and under the immediate supervision and control of the land department.   Until April 14, 1880, when the patent was issued, the legal title remained in the United States, the land was not disposed of, nor segregated from other public lands for any specific purpose.   When applications should be made therefor, under any of the various acts of congress providing for the disposal of the public lands, the officers of the land department were invested with full authority to inquire, and exclusive right, in the first place, to determine, which applicant was entitled to the patent.   It mattered not

whether the application was made under the pre-
emption, homestead or other general acts of congress,
or under a grant such as that considered in this case.
In every case, the decisions of these officers was called
for.   They were required to act upon the applications
made, and to issue a patent to the one appearing to
them to be entitled thereto.   It admits of no question
whatever that lands not included within this grant,
because of the attaching thereto of a pre-emption
claim, were subject to the disposal of the land de-
partment.   Its authority in that regard is clearly and
specifically prescribed by the several acts of congress
relating to the public lands.   If lands attempted to be
conveyed had been previously disposed of, or if they
had been set apart by competent authority for a spe-
cific use, and had thus passed beyond the control of
the land department, such attempted conveyance
would be a nullity, and the patent would be held void
in any proceeding wherein the question of its validity
might arise.   It would be, in legal effect, the same as
an attempted conveyance of a tract of land by a party
who had no title or interest therein.   By the applica-
tion of this principle, the patents were held to be
void, because the lands included were not subject to
disposal by the land department, in *Wilcox v. Jackson*,
13 Pet. 498, where the land had previously been re-
served for a military post; in *Bert v. Polk*, 18 Wall.
112, where the land had been appropriated and re-
served for an Indian ; and in *Doolan v. Carr*, 125 U. S.
618, where the land was embraced within the limits
of a disputed Mexican grant.   In these and other like
cases the patents were held to be void, not simply be-
cause they were issued to persons who were not enti-
tled to them, but because the land department was
without authority to issue a patent to any person

whomsoever; there was no jurisdiction of the subject-matter — the land. The distinction, however, is clear and well defined between such cases and the case under consideration. Here it is conceded that it was proper a patent should be issued to one legally entitled thereto; and it is only objected that the railroad company was not shown to be the one so entitled. The correctness or incorrectness of a decision or judgment has nothing to do with jurisdiction, which is simply the power to act upon the particular subject-matter to be affected. This authority to act existed in this instance, and the land department consequently had jurisdiction over the matter of the issuance of the patent.

It necessarily follows, therefore, that the patent in this case was voidable, not void, and might have been canceled at the instance of the United States, at any time before the title passed to an innocent purchaser; but it conveyed the legal title to the land, and vested in the railroad company and subsequent grantees a title which was good against all the world, except against the United States, or one showing a superior equitable title. (*United States v. Schurz*, 102 U. S. 378; *Smelting Co. v. Kemp*, 104 id. 636; *Steele v. Smelting Co.*, 106 id. 447; *United States v. W. & St. P. Rld. Co.*, 67 Fed. Rep. 948.) In the case last cited, the United States circuit court of appeals, eighth circuit, had under consideration the question whether a patent issued under the circumstances similar to those in this case was void or voidable, and the whole subject was ably and exhaustively discussed by Mr. Justice Sanborn, who delivered the opinion of the court. In the course of the opinion, speaking of the authority of the officers of the land department to pass upon the

right of the railroad company under the grant to any particular lands, he said :

"In deciding this question they necessarily considered whether or not the railroad company had so far complied with the acts granting the lands that it had earned them ; the character of the lands themselves, and the class to which they belonged ; the time of the definite location of the line of the railroad, the homestead entries and the pre-emption filings that were then upon the lands ; the cancellation of all these entries and filings that had been made ; and, finally, the legal effect of all these and all other material facts upon the claim of the railroad company to receive the lands under the acts of congress. It now appears that they were mistaken as to the legal effect of these facts, but the question they decided was one which the acts of congress authorized and required them to decide — one which they were obliged to decide before they issued the certificates ; and, although their decision and their conveyances evidenced by these certificates may be voidable, they are not absolutely void. They are impregnable to collateral attack, and they convey the legal title to the lands to the state and its grantees."

If a patent has been erroneously issued, through fraud, mistake, or wrong views of the law, to one party when another was legally entitled to it, a court of equity may grant relief by adjudging the legal title conveyed by the patent to be held in trust for the one who has the better right to it. (*M. K. & T. Rly. Co. v. Noyes*, 25 Kan. 340 ; *Johnson v. Towsley*, 13 Wall. 72–85 ; *Shepley v. Cowan*, 91 U. S. 330 ; *Steele v. Smelting Co.*, 106 id. 447.) Or the patent may be canceled at the suit of the government. But an innocent purchaser of the title will be protected even against the government. (*United States v. B. & M. R. Rld. Co.*, 98 U. S. 342 ; *C. C. & I. Co. v. United States*, 123 id. 307 ;

*United States v. C. & O. L. Co.*, 148 id. 31; *United States v. W. & St. P. Rld. Co.*, 67 Fed. Rep. 948.) But by no proceeding, either in law or in equity, can a mere voidable title be questioned or set aside on behalf of one who does not show in himself a superior equitable or legal title. A mere trespasser or intruder upon the premises has no standing in court for any such purpose. One may invoke the relief which a court of equity can give in such cases only upon the ground that he has a legal right to the title if the voidable title were out of the way. It is not sufficient for him to rely merely upon the fact that the title was improperly awarded to the grantee named in the instrument of conveyance. (*Eaton v. Giles*, 5 Kan. 24; *Burnham v. Starkey*, 41 id. 904; *Ard v. Pratt*, 43 id. 419; *Stark v. Starr*, 6 Wall. 402–418; *Wirth v. Branson*, 98 U. S. 118; *Steele v. Smelting Co.*, 106 id. 447–454; *Bohall v. Dilla*, 114 id. 47; *Lee v. Johnson*, 116 id. 48.)

To overcome the title conveyed by the patent, and through the subsequent conveyances vested in Wilkinson, it must have been shown that Wilkinson was not in the position of an innocent purchaser, and that, consequently, the title was voidable as to him; and that Bean, being qualified to make a timber-culture entry, had so complied with the provisions of that act as to be entitled to the patent, which he was prevented from acquiring by the erroneous cancellation of his entry. His mere possession, without title, is without avail against the holder of the legal title, notwithstanding such title may be voidable at the instance of its grantor. (*Foss v. Hinkell*, 78 Cal. 158; *Hoofnagle v. Anderson*, 7 Wheat. 212; *Cooper v. Roberts*, 18 How. 173; *French v. Fyan*, 93 U. S. 169.) If Bean was in the open, notorious and exclusive pos-

24—2 APP.

session of the land, under an apparent claim of ownership, such possession was notice to purchasers of whatever claim he asserted, whether legal or equitable ; and if he had the equitable title by reason of his compliance with the timber-culture act, which he asserted as his right to possession, and was entitled to the patent, no one could, as against him, claim to be an innocent purchaser. (*Johnson v. Clark*, 18 Kan. 157–164 ; *School District v. Taylor*, 19 id. 287 ; *Utley v. Fee*, 33 id. 683–690.)

Under the findings of fact made by the court, the tax deed was invalid, for the reason that no publication was made of the statutory notice of the time when the land would be deeded if not redeemed, and it furnished no defense in this case. Neither do we think the fact that Bean took an assignment of the certificate issued on the sale of the land for taxes, and accepted a tax deed, can be held to prejudice any other right or interest he may at the time have had in the land. It does not appear that he was in any way responsible for the assessment of the land for taxation, or that he accepted the deed for any other purpose than to avoid the prejudice which might result to his interests by its passing into other hands.

The claim by adverse possession cannot be maintained. The court found that Bean was in possession of the land continuously from some time in 1872 until the time of the trial. This action was commenced November 11, 1889. But as the title was in the government until the patent issued, April 14, 1880, his possession until then was not such as would ever ripen into a title which could be asserted against the United States, or made the basis of a title against subsequent grantees. Rights cannot be acquired in public lands by statutes of limitation. ( *Wood v. M. K. & T. Rly.*

*Co.*, 11 Kan. 324–348; *Oaksmith's Lessee v. Johnston*, 92 U. S. 343.)

We hold, therefore, that under the findings of fact the defendants were not entitled to a judgment in their favor. We do not, however, feel justified in saying that judgment upon the findings should be rendered for the plaintiff for a foreclosure of his mortgage, and barring Bean from all further interest in or title to the land, as urged by counsel for the plaintiff. The record does not contain the evidence, and the findings are silent upon certain facts which are material and essential to the determination of the rights of these parties. If Bean was in fact and in law entitled to the patent to this land, and the plaintiff does not occupy the position of an innocent holder of the legal title, we think an opportunity should be given to show such facts.

The judgment will be reversed, and the case remanded for a new trial.

All the Judges concurring.