No. 23,592.

J. W. HARVEY, *Appellee*, v. MISSOURI PACIFIC RAILROAD COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. QUIETING TITLE—*Unused Portion of Railroad Right of Way—Right of Holder of Legal Title to Possession.* The holder of the fee title to land taken under condemnation proceedings for railway purposes remains the owner of the property, and has the right to occupy and use such portion of the condemned property as the railway company does not actually require or use for the proper, safe, convenient and efficient discharge of its duties as a public carrier; but such occupancy and use are neither adverse, hostile, nor inconsistent with the rights of the railway company, nor will the lapse of time bar the railway company of its rights acquired and paid for under the condemnation proceedings.

2. SAME—*Possession of Unused Portion of Right of Way—Possession Not Adverse to Railroad Company.* Certain lands of plaintiff's predecessor in title were condemned in 1879 for railway purposes. Hitherto the defendant company has not used or needed all the land condemned, and a portion of of it has been continually occupied and used by the plaintiff and his predecessors in title. *Held,* that as plaintiff and his predecessors in title were strictly within their rights in occupying and using that portion of the property not yet required for railway purposes, there has been no adverse, hostile, inconsistent use to the prejudice of the railway company, nor has the latter been excluded so as to give rise to an independent right founded on fifteen years' adverse possession; and an action on the part of the fee title holder to quiet his title against the railway company cannot be maintained.

Appeal from Osborne district court; WILLIAM R. MITCHELL, judge. Opinion filed June 10, 1922. Reversed.

W. P. Waggener, Walter E. Brown, both of Atchison, and N. C. Else, of Osborne, for the appellant.

H. McCaslin, and Edgar C. Bennett, both of Osborne, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff brought this suit to quiet his title to some land in Osborne which was condemned in 1879 for railway sidetracks, depots, workshops, water station and stockyards. Plaintiff is the successor in title to the fee holder of 1879, and the defendant is the successor of the railway corporation for whose use the property was condemned.

Notwithstanding the lapse of years and the general development of that community, only a limited portion of the land condemned in 1879 has yet been used or needed for railway purposes—the usual hundred-foot strip for a right of way. During this long interim successive holders of the fee title have had uninterrupted use and enjoyment of the condemned land to within fifty feet of the center of the railway track. Encroaching to that limit there was built and maintained for many years (from 1885 to 1901) the stables and buildings of a county fair association which then owned the property. These structures have now been removed, but the present owner and plaintiff has a stockyard and scales worth $200 on the property involved herein. The plaintiff says "I brought this suit to find out if I did own it or didn't."

Since the plaintiff holds the fee title he is of course the owner, nor did he need to bring any suit to quiet his title. (K. C. Rly. Co. v. Allen, 22 Kan. 285.) One whose property is subjected to condemnation for railway or other public uses is none the less the owner of the fee and holder of the ultimate title. He has what the law calls the servient estate. The party for whose use the condemnation was made has what is called the dominant estate. And while the fee holder, after condemnation and compensation, may not interfere with the rights of the holder of the dominant estate, yet as owner he may still continue to use the property for any purpose which does not frustrate the public aims and ends for which the property was condemned. If gold, diamonds, or other minerals lay beneath the main line of this railway within the hundred-foot limit now actually used for railway purposes, these

minerals would belong to the plaintiff and he might mine for them so long as he did not interfere with the operation of the railway nor imperil the surface support. (*Railroad Co. v. Schmuck,* 69 Kan. 272, 76 Pac. 836.) If the railway at Osborne should be abandoned or relocated elsewhere than on plaintiff's property the dominant estate would terminate and the defendant's right acquired by condemnation would terminate and revert to the plaintiff.

It was not necessary for the condemnation commissioners in 1879 to limit the amount of land to be condemned for railway purposes to the actual acreage required at that time. In the exercise of their discretion they could look to the future and to the gradually expanding need for switch yards, sidings, workshops and the like, and condemn such amount as seemed reasonable to them. Nor was this any hardship on the owner. He was paid for the land taken; and yet he and his successors in title down to and including the plaintiff have none the less enjoyed the possession, emblements and profits of most of the condemned property for all these years. Of course, so long as the railway company did not need all the property condemned, the successive fee-title holders were strictly within their rights in occupying and using it. But since they were within their rights in using and occupying the property, and because hitherto the defendant and its predecessors have not needed all the property condemned in 1879, there could be no such thing as adverse or inconsistent use, nor could there be adverse possession for fifteen years so as to found an independent title and thus bar the railway company of its rights acquired by condemnation. Before the fifteen years' bar could give rise to a right to exclude the defendant, it would be necessary to show that during that time the plaintiff had occupied the property to the prejudice of the defendant, that the defendant during that interval had needed the property for railway purposes but had been excluded therefrom by the plaintiff or his predecessors in title. It was not necessary for the railway company to make some pretended use of all the condemned property, to the exclusion of the successive fee-title holders, in order to preserve its rights. The defendant was not required to clutter up the outlying portions of the tract with old ties, rails or other junk merely to assert its dominant estate and discommode the owner of the fee. Such mere pretended use would have been an invasion of the rights of the fee-title holder, who always had and still has such rights of enjoyment, use and possession as do in no

way impair or interfere with the proper, safe, convenient and efficient discharge of the defendant's duties as a public carrier. In *U. P. Rly. Co. v. Kindred,* 43 Kan. 134, 136, 23 Pac. 112, it was said:

"In *Railway Co. v. Allen,* 22 Kas. 285, this court decided that where the railway company has only an easement, the proprietor of the soil retains the fee of the land, and his right for every purpose not incompatible with the rights of the railway company. This rule is recognized everywhere. Although the abutting land-owners have cultivated and inclosed part of the right-of-way granted by congress, this possession cannot be considered as hostile or adverse. . . . If the abutting land-owners own the fee of the right-of-way, they may use the land in any way not inconsistent with the paramount rights of the railway company; but such use will not give them adverse possession so as to confer title."

In *Railway Co. v. Burns,* 70 Kan. 627, 629, 79 Pac. 238, it was said:

"The right acquired by a railroad company by condemnation proceedings for right of way, depot grounds and terminal facilities dominates every right of possession, except as to the owner of the fee, and he may use only that portion which is not in immediate use by the company, and not necessary to the safe and convenient use of that which is in actual service."

We recognize that this case is not necessarily controlled by those decisions which have had to deal with the rights of occupants of unused portions of the rights of way granted by congress to the Pacific railroads, like *Railway Co. v. Watson,* 74 Kan. 494, 87 Pac. 687, and *Railroad Co. v. Davenport,* 102 Kan. 513, 170 Pac. 993; and we note, also, that there are two opposing lines of authorities on the present question (2 C. J. 225; 1 R. C. L. 737, and citations); but when it is kept in mind that these condemnation proceedings are authorized not as a mere special privilege to the persons who form the railway corporation nor for its private profit, but are in fact an exercise of the state's power of eminent domain to provide the public with a modern system of transportation and a modern commercial highway, it seems more logical to hold that rights acquired under such proceedings are not lost through lapse of time and nonuse, so long as the railway has a potential need of them, and where there has been in fact no adverse, hostile, inconsistent use nor prejudicial exclusion of the holder of the dominant estate. If at some future time the hitherto unused property condemned in 1879 should be required for railway purposes, it would seem illogical to say that the state's power of eminent domain would have to be reinvoked and that condemnation proceedings would have to be undertaken again. If the property in dispute is never needed for

Parrott v. Railway Co.

railway purposes, the plaintiff remains not only the owner of the fee—but will continue as heretofore to possess and enjoy it. Under the circumstances, however, he has established no cause of action against the railway company.

Reversed and remanded with instructions to enter judgment for defendant.