No. 35,238

BOEING AIRPLANE COMPANY, and BEECH AIRCRAFT CORPORATION, *Appellees*, v. THE STATE COMMISSION OF REVENUE AND TAXATION, JOHN MCCUISH, Chairman and Commissioner; WILLIAM LJUNGDAHL and MARC BOSS, Commissioners, and BERT E. MITCHNER, Director of Revenue, *Appellants*.

(113 P. 2d 110)

Opinion filed May 10, 1941.

*Vernon C. Rosenstahl,* of Parsons, *Mason Mahin,* of Smith Center, and *Ralph A. Rodgers,* of Lincoln, for the appellants.

*Robert C. Foulston, George Siefkin, C. G. Yankey* and *Harvey C. Osborne,* all of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from a declaratory judgment in an action to determine whether plaintiffs must pay the sales tax and the compensating use tax on the materials they purchase to equip their airplane manufacturing facilities so as to enable them to build airplanes for the federal government.

The action involves no dispute of fact. The pleadings only raise questions of law concerning the legal status of the property sought to be taxed, and that depends on the terms of an elaborate contract between the plaintiffs and the United States.

The plaintiffs allege that each of them is engaged for profit in the manufacture and sale of airplanes and their component parts in Wichita, that each of them has entered into an agreement with the United States to construct an additional unit to their present plant facilities according to the terms of an elaborate "facility contract" of 31 pages which may be summarized thus:

Plaintiff's present plant facilities are to be enlarged according to plans and specifications prescribed by the government; such facilities are to be devoted exclusively to the manufacture of airplanes for the government as a part of its emergency program for national defense. Each company agrees to construct and equip a factory according to government specifications, and to build airplanes for the government therein. The government agrees to pay the entire cost of such construction and equipment in 60 monthly payments on plaintiff's statements of such costs when approved by a government auditor. The title to the projected factory and its equipment is to vest in the company until the 60 monthly payments of cost are made, whereupon the title is to be transferred to the government, subject to an option in favor of each company to buy out the government's interest on specified terms.

The contract provides that the company shall not permit liens

or mortgages to attach to the factory or its equipment, that it will deliver it to the government at the end of five years in good repair, that obsolete articles can only be sold with the government's consent, that the company will carry insurance on the property payable to the government in the event of loss, and that the government may require the company to apply the proceeds of such insurance to the replacement or repair of the damaged property.

It is also agreed that the entire plant facilities thus financed by the government shall be devoted exclusively to the manufacture of airplanes and airplane parts for the use of the government and cannot be used for any private purpose.

The plaintiff companies allege that in view of the terms of their contracts under which these emergency plant facilities are constructed and installed the Kansas sales tax and the Kansas compensating use tax should not be exacted; and that if plaintiffs should pay these taxes they run the risk of having the items represented by such payments rejected and disapproved by the government's auditors, to the irreparable loss and damage of the plaintiffs. Hence plaintiffs' prayer for a declaratory judgment in the premises.

This action involves the exaction of the sales tax on the personal property purchased within the state to equip these enlarged airplane plant establishments and the exaction of the compensating use tax on the personal property purchased outside the state for use in these enlarged facilities. Some of the latter run into large figures; for example, a pneumatic compressor costs $10,000, a hydro-electric press $53,000, turret lathes $26,000, testing machine $7,000, etc.

In their petition plaintiffs tender this issue of law:

"That the plaintiffs, and each of them, are ready, able and willing to pay all taxes lawfully assessed against or collectible from them, but that said plaintiffs, and each of them, contend that under the emergency facility contracts executed under the national defense act they are in fact, (a) constructing and operating a federal government factory; (b) that they are arms, agencies or instrumentalities of the United States government: (c) that to collect such tax is an undue burden on federal governmental functions, and (d) said tax and the collection thereof is expressly exempted under the provisions of G. S. 1939 Supp., 79-3606 . . ."

In their answer defendants joined issues on the legal questions presented.

The district court gave judgment for the plaintiffs, holding that the sales and use taxes should not be exacted.

Defendants bring the case here for review, citing many more or less analogous cases for our instruction, and counsel for the appel-

lees do likewise. We have examined these cases and we may refer to some of them below, but first let us note the pertinent statutes. G. S. 1939 Supp., 79-3603, among other matters provides for a two percent sales tax on all tangible personal property sold at retail within this state. The next section of the same statute declares that this tax is to be paid by the purchaser and collected by the retailer.

G. S. 1939 Supp., 79-3703, provides that a similar tax of two percent shall be collected for the privilege of using within this state any tangible personal property based on its purchase price, except where a sales tax has been collected thereon pursuant to 79-3603 or otherwise. The manifest purpose of this section is to reach property bought outside this state as if it had been purchased within the state.

The statutes just cited make certain exemptions, and the relevancy and scope of these will bring us to the crux of this appeal. The exemptions from the sales tax, so far as we shall need to consider them, are these:

"(c) Any sale which under the constitution and statutes of the United States or of this state which may not be made the subject of taxation by this state; (d) all sales of tangible personal property or service used in or for the performance of a contract for public works . . ." (G. S. 1939 Supp., 79-3606.)

The exemptions from the use tax, so far as here pertinent, apply to—

"(e) . . . Any article of tangible personal property brought into or used within the state of Kansas if such article of tangible personal property would not have been subject to tax under the provisions of the retailer's sales tax act of this state if purchased within this state." (G. S. 1939 Supp., 79-3704.)

It is well settled that what are familiarly designated as federal agencies or federal instrumentalities and their property are not subject to any form of state taxation except where the congress of the United States permits that to be done. (*Capitol B. & L. Ass'n v. Commission of Labor & Industry,* 148 Kan. 446, 447, 83 P. 2d 106.) Another exemption would be where the state law itself has so declared. It can hardly be said that the statutory exceptions quoted above make an express exception from taxation as to the matters of present concern. The statutory provisions imposing our local sales tax and use tax would seem to cover them, unless the contract between the government and the plaintiffs (which is quite properly a

vital part of the pleadings) makes it clear that the property the state seeks to subject to these taxes is government property or property of a government instrumentality. The early case of *McCulloch v. Maryland,* 4 Wheat. 316, 4 L. Ed. 579, held that the state of Maryland could not tax the currency issues of the Bank of the United States because that bank was an instrumentality employed by the government to execute its constitutional powers. In the recent case of *Clallam County v. United States,* 263 U. S. 341, 68 L. Ed. 328, the same rule of law was applied. In that case a corporation had been chartered by the state of Washington at the instance of the federal government. Its corporate purpose was to provide aircraft materials for the prosecution of the war with Germany in 1917-1919. The federal government subscribed for all the stock (except for directors' qualifying shares) and conveyed to the corporation lands and other property which constituted all the corporation's assets. It was held that the corporation was an instrumentality of the government and in consequence its property was exempt from state taxation.

In *Panhandle Oil Co. v. Knox,* 277 U. S. 218, 72 L. Ed. 857, the action arose over the imposition of an excise tax of three and four cents per gallon on all gasoline retailed in the state of Mississippi. The Panhandle Oil Company declined to pay the tax on its sales of gasoline to the United States for the use of its Coast Guard and Veterans' Hospital. The state court held that the tax was properly imposed and gave judgment against the oil company. (*State, ex rel., v. Panhandle Oil Co.,* 147 Miss. 663, 112 So. 584.) But the United States supreme court, by a five-to-four decision, held that as applied to sales of gasoline to the United States government the tax was void, citing *McCulloch v. Maryland, Clallam County v. United States* and other familiar cases.

Doubtless the rule which exempts from state taxation all agencies, instrumentalities, property and concerns of the federal government is as potent today as heretofore, but in our time there is an increasing tendency to scrutinize the factual situation in which such exemption is claimed, and instances are not wanting where long-settled precedents which had magnified rather than minimized the basis for such exemption have been repudiated in recent years by our court of last resort. (*Graves v. N. Y. ex rel. O'Keefe,* 306 U. S. 466, 83 L. Ed. 927, 120 A. L. R. 1466, and cases cited therein, some of which are expressly and others impliedly overruled.) Indeed the supreme court has declared that no hard and fast rule can be stated to gauge

all the cases where the exercise of the state's power to tax would trench upon the government's immunity and those cases where the federal government's interest or concern is so remote that a claim of immunity in its behalf would be too tenuous and remote to support it. Thus, in *Metcalf & Eddy v. Mitchell*, 269 U. S. 514, 70 L. Ed. 384, it was said:

"It is apparent that not every person who uses his property or derives a profit, in his dealings with the government, may clothe himself with immunity from taxation on the theory that either he or his property is an instrumentality of government within the meaning of the rule. (Citations.) . . .

"As cases arise, lying between the two extremes, it becomes necessary to draw the line which separates those activities having some relation to government, which are nevertheless subject to taxation, from those which are immune. Experience has shown that there is no formula by which that line may be plotted with precision in advance. But recourse may be had to the reason upon which the rule rests, and which must be the guiding principle to control its operation." (pp. 522, 523.)

The case of *Baltimore Shipbuilding Co. v. Baltimore*, 195 U. S. 375, 49 L. Ed. 242, was measurably analogous to the case at bar. There the federal government had conveyed to the plaintiff in error a tract of government land for a dry dock and shipbuilding yard upon condition that the grantee would create facilities thereat so that the government's ships could be repaired therein without docking charges. The grant also provided for a reverter for condition broken. The company claimed that the property so acquired and held by it was a federal agency, actually used by the federal government, and hence not subject to state taxation. The supreme court rejected this contention and sustained the state's right to tax the property, saying:

"We are of opinion that the land is not exempt as an agency of the United States. . . . It seems to us extravagant to say that an independent private corporation for gain, created by a state, is exempt from state taxation, either in its corporate person, or its property, because it is employed by the United States, even if the work for which it is employed is important and takes much of its time." (p. 382.)

In *Trinityfarm Co. v. Grosjean*, 291 U. S. 466, 78 L. Ed. 918, the suit was to enjoin the supervisor of public accounts of Louisiana from exacting a state excise tax on gasoline which was used by the plaintiff company in constructing levees along the Mississippi river under contract with the United States. It was contended that the contracts of construction were federal means or instrumentalities and that the tax was a direct burden thereon which the state of

Louisiana was without power to impose. In affirming the lower court's judgment denying the injunction, part of the supreme court's opinion is instructive. In part it reads:

"The power granted by the commerce clause is undoubtedly broad enough to include construction and maintenance of levees in aid of navigation of the Mississippi river, and to authorize the performance of the work directly by government officers and employees or pursuant to contracts such as those awarded to appellant. The latter method was chosen and the validity of the challenged tax is to be tested on that basis. It is not laid upon the choice of means, the making of the contracts, the contracts themselves, or any transaction to which the federal government is a party or in which it is immediately or directly concerned. Nor is the exaction laid or dependent upon the amounts, gross or net, received by the contractors. . . . Unquestionably, as appellant here concedes, Louisiana is free to tax the machinery, storage tanks, tools, etc., that are used for the performance of the contracts. These things are as closely connected with the work as is the gasoline in respect of which is laid the excise in question. There is no room for any distinction between the plant so employed and the gasoline used to generate power. If the payment of state taxes imposed on the property and operations of appellant affects the federal government at all, it at most gives rise to a burden which is consequential and remote and not to one that is necessary, immediate or direct. (Citations.) Appellant's claim of immunity is without foundation." (pp. 471, 472.)

In the recent case of *Standard Oil Co. v. Lee*, (Florida, 1940) 199 So. 325, the action was to enjoin the state comptroller of Florida from exacting the state tax on gasoline sold by plaintiff to various contractors for use in constructing a naval air station for the federal government. The work was being constructed on a cost-plus basis, and the legal question was whether or not sales of gasoline to contractors for use in that large federal project were subject to the state tax. It was argued that such sales in effect were made to the United States because its contracts with the contractors bound it to pay the net cost of all materials and labor and to reimburse them for all out-of-pocket expenditures in the construction of the naval air station. Counsel for the state cited *Trinityfarm Co. v. Grosjean*, supra, and *Graves v. N. Y. ex rel. O'Keefe*, supra, to which the court gave its approval, saying in part:

"The test of validity of the tax in these cases is not whether it is laid directly on the United States or one of its governmental agencies, but whether or not in the way laid, it directly retards, impedes, or burdens the United States in the exercise of its constitutional powers. It cannot be questioned that the tax here falls ultimately on the federal government. The contractors are agencies of the latter, executing a contract for profit; they do not perform any governmental function. The burden on the federal government is consequential and remote. It increases the cost to the government, but when

accomplished in this manner, the federal cases appear to sanction the contract.

". . . We reached the conclusion that the case at bar is ruled by the cases relied on by appellees. In its contract with appellees the federal government agreed to pay the tax and it is not here protested, so the judgment is affirmed." (p. 326.)

Another case worthy of perusal on the question at bar is *James v. Dravo Contracting Co.*, 302 U. S. 134, 82 L. Ed. 155, 114 A. L. R. 318, where the legal question involved validity of a tax imposed by West Virginia on the gross receipts of the Dravo Contracting Company on its contracts with the United States for the construction of locks and dams on the Kanawha river and the Ohio river. The contracts provided for partial payments as the work progressed and that all the materials and work covered by the partial payments should thereupon become "the sole property of the government." Payments by the government were made from time to time accordingly. The court held that so much of the company's gross receipts as resulted from its business in Pennsylvania and elsewhere outside of West Virginia could not be subjected to the tax complained of, but on that portion derived from its activities within that state the tax was valid. Some excerpts from the opinion of Mr. Chief Justice Hughes are quite pertinent to the case we are considering. These read:

"The application of the principle which denies validity to such a tax has required the observing of close distinctions in order to maintain the essential freedom of government in performing its functions, without unduly limiting the taxing power which is equally essential to both nation and state under our dual system.

. . . . . . . . . . . . . . . .

"Many years ago the court recognized and enforced the distinction between a tax laid directly upon a government contract or an instrumentality of the United States and a tax upon the property employed by an agent or contractor in performing services for the United States. 'Taxation of the agency is taxation of the means; taxation of the property of the agent is not always, or generally, taxation of the means.' *Thomson v. Pacific Railroad,* 9 Wall. 579, 591.

. . . . . . . . . . . . . . . .

"If it be assumed that the gross receipts tax may increase the cost to the government, that fact would not invalidate the tax. With respect to that effect, a tax on the contractor's gross receipts would not differ from a tax on the contractor's property and equipment necessarily used in the performance of the contract. Concededly, such a tax may validly be laid. Property taxes are naturally, as in this case, reckoned as a part of the expense of doing the work. Taxes may validly be laid not only on the contractor's machinery but on the fuel used to operate it. . . . But a tax of that sort unquestionably increases the expense of the contractor in performing his service and may, if

it enters into the contractor's estimate, increase the cost to the government. The fact that the tax on the gross receipts of the contractor in the Alward case, *supra,* might have increased the cost to the government of the carriage of the mails did not impress the court as militating against its validity." (pp. 150, 153, 160.)

Applying the foregoing precedents and others which merely reiterate the selected quotations we have made, we reach the conclusion that plaintiffs' contentions for the exemption of the machinery and equipment for their airplane plant facilities in Wichita from the Kansas sales tax and the Kansas use tax cannot be sustained. While it is true that the government has agreed to reimburse the plaintiffs for the cost of these properties, and the properties will become government property five years hence unless one of several options to keep them is exercised by plaintiffs, that situation does not justify their exemption from the challenged taxes. Neither does the fact that the government has bound plaintiffs to many strict obligations in respect to the construction and installation of the projected airplane plant facilities relieve plaintiffs from the payment of the questioned taxes. Nothing is more common than for an exacting money-loaner to impose strict obligations upon a borrower—to keep the property built or equipped with the borrowed money free from mortgages, tax liens or other liens, and to keep it insured for the benefit of the money-loaner as his interest may appear. Indeed, many an exacting money-loaner requires the borrower to carry life insurance on himself and liability insurance on his employees, and frequently requires that the improvements to be made or built with the borrowed money shall be constructed according to plans approved by an architect or civil engineer named by the money-loaner.

In recent years the government has gone into the money-loaning business in a large way, and when it does it commonly prescribes a multitude of conditions—in respect to hours of labor, wage scales, arbitration of disputes between employer and workmen, etc., etc. We concede that the relation of money-loaner and borrower may not precisely define the status of plaintiffs to the federal government, but in respect to their financial arrangements to pay for equipment and installation of machinery in their airplane plant facilities in Wichita there is a reasonably close analogy.

This court holds that the challenged taxes should be paid, and the judgment of the district court must therefore be reversed and the cause remanded with instructions to enter judgment for defendants.

The judgment is reversed.