No. 58,332

EUGENE L. MILLER, SR., *Appellant*, v. THE ST. LOUIS, SOUTHWESTERN RAILWAY COMPANY, *et al.*, *Appellees*.

(718 P.2d 610)

Opinion filed May 2, 1986.

*Eldon L. Meigs*, of Pratt, argued the cause and was on the brief for appellant.

*Gregory A. Lee*, of Marshall, Davis, Bennett & Hendrix, of Topeka, argued the cause and was on the brief for appellee St. Louis, Southwestern Railway Company.

The opinion of the court was delivered by

MCFARLAND, J.: This is an action by Eugene L. Miller, Sr., to quiet title of land within the operating right-of-way of defendant St. Louis, Southwestern Railway Company. The trial court entered judgment in favor of the defendant railroad and plaintiff appeals therefrom.

In 1906 the Chicago, Rock Island and Pacific Railroad Company acquired an operating right-of-way by condemnation to a portion of Blocks 45, 46 and 65, Grandview Addition, to the City of Pratt. The tract lies south of and adjacent to the railroad's main line, is situated approximately 75 feet from the actual track and consists of approximately one acre. Between 1919 and approxi-

mately 1965 the tract was used by the railroad for livestock holding facilities and contained stock pens, hay barns, scales and a sale barn. Between 1965 and 1967 the Rock Island phased out its livestock shipping operations on the tract. In 1969 plaintiff purchased Blocks 45, 46 and 65 from the fee owner subject to Rock Island's interest therein.

The former livestock facilities on the one-acre tract had fallen into disrepair and suffered from neglect. Debris from the demolished buildings and fences littered the tract and tall weeds had taken over. Plaintiff sought assistance from the City of Pratt in cleaning up the tract, but the City advised plaintiff he should contact the railroad. Local Rock Island officials referred defendant to the company's Chicago headquarters. Plaintiff was concerned that the property was unsightly and a fire hazard as well. He wrote the Chicago office about the situation and received a letter back stating the company did not intend to clean up the property. The only evidence at trial of this exchange of communications was plaintiff's recall and an envelope postmarked October 6, 1969, addressed to plaintiff and bearing a Rock Island return address.

After receiving the reply letter, plaintiff undertook the clean-up himself. He placed permanent steel bolts on the boundary lines, cut the weeds, picked up the debris, planted alfalfa, trees and a garden and stored some equipment on the tract. Plaintiff has paid the taxes on the tract since 1969. In 1980 the Southern Pacific Transportation Company purchased Rock Island and all railroad property was assigned to St. Louis, Southwestern Railway Company, a Southern Pacific subsidiary. On November 14, 1984, the plaintiff brought this quiet title action asserting three theories: adverse possession, abandonment, and estoppel. As previously stated, the district court, following a bench trial, entered judgment in favor of the railroad.

## ADVERSE POSSESSION

The difficulty with plaintiff's adverse possession theory lies in the nature of the interests held by him and the railroad. A similar assertion was made in *Harvey v. Railroad Co.*, 111 Kan. 371, 207 Pac. 761 (1922).

In *Harvey* a railroad condemned a tract of land adjoining its 100-foot right-of-way in 1879 for the purpose of maintaining railroad sidetracks, depots, workshops, water station and stock-

yards. Only the 100-foot right-of-way had actually been used for railroad purposes. Plaintiff, the fee holder of the acreage, brought suit to quiet title in the tract under the doctrine of adverse possession. Plaintiff showed that between the time of the taking and the time of suit, he and his predecessors had fully occupied the tract. The property had been utilized at one time as stables and for county fair buildings. Plaintiff had a livestock sale barn on the property.

In rejecting plaintiff's adverse possession theory, the court in *Harvey* reasoned:

"One whose property is subjected to condemnation for railway or other public uses is none the less the owner of the fee and holder of the ultimate title. He has what the law calls the servient estate. The party for whose use the condemnation was made has what is called the dominant estate. And while the fee holder, after condemnation and compensation, may not interfere with the rights of the holder of the dominant estate, yet as owner he may still continue to use the property for any purpose which does not frustrate the public aims and ends for which the property was condemned." 111 Kan. at 372.

Further, in explaining why plaintiff's claim of adverse possession would not lie, the court stated:

"But since they [successive fee title holders] were within their rights in using and occupying the property, and because hitherto the defendant and its predecessors have not needed all the property condemned in 1879, there could be no such thing as adverse or inconsistent use, nor could there be adverse possession for fifteen years so as to found an independent title and thus bar the railway company of its rights acquired by condemnation. Before the fifteen years' bar could give rise to a right to exclude the defendant, it would be necessary to show that during that time the plaintiff had occupied the property to the prejudice of the defendant, that the defendant during that interval had needed the property for railway purposes but had been excluded therefrom by the plaintiff or his predecessors in title. It was not necessary for the railway company to make some pretended use of all the condemned property, to the exclusion of the successive fee-title holders, in order to preserve its rights." 111 Kan. at 373.

The Court of Appeals relied primarily upon *Harvey* in *Atchison, Topeka & Santa Fe Ry. Co. v. Humberg,* 9 Kan. App. 2d 205, 675 P.2d 375 (1984). There, a railroad condemned a 100-foot right-of-way in 1886, including three tracts of land owned by the defendant. The three tracts had not been used for railroad purposes for more than thirty years and defendant (and his predecessors in title) farmed the land during that time. The railroad brought suit to determine the rights of the parties in the three tracts of land. Defendant asserted ownership under the doctrine of adverse possession.

The Court of Appeals, in *Humberg*, determined that the principles discussed in *Harvey* were still the law of this state and defendant's use and occupancy of the land were not adverse to the interest of the railroad. The court reaffirmed the rule that when a railroad acquires land by virtue of an easement, condemnation, right-of-way or other conveyance, the railroad does not obtain a fee simple title to the right of way.

Plaintiff may have enjoyed full use of the property since 1969 but such usage was not hostile or adverse to the railroad save one incident in 1980. The 1980 occurrence, as testified by plaintiff, involved an attempt by defendant railroad to store equipment on the property during a track refurbishing program. Plaintiff denied railroad employees the use of the property at that time. Any claim of adverse possession could only commence in 1980—far short of the fifteen year requirement set forth in K.S.A. 60-503. We conclude the trial court did not err in refusing to find plaintiff acquired any title through adverse possession.

## ABANDONMENT

What constitutes abandonment of a railroad right-of-way was discussed in some depth in *Martell v. Stewart*, 6 Kan. App. 2d 387, 628 P.2d 1069 (1981). The Court of Appeals stated:

"The cardinal principle to follow in determining when a railroad right-of-way is abandoned is that there must be satisfaction of what has been termed the 'unitary rule.' Simply stated, both intent to abandon and action to carry out that intent must combine. In *Pratt v. Griese*, 196 Kan. 182, 409 P.2d 777 (1966), the rule was stated by adopting a quotation from 74 C.J.S., Railroads § 117b, pp. 541-42:

" 'Whether a right of way has been abandoned by a railroad company is largely a question of intent, and it is generally held that in order to constitute an abandonment there must be an intent to relinquish, together with external acts by which the intent is carried into effect.'

"American Jurisprudence treats the principle a bit differently. It states that the acts 'must be of a character so decisive and conclusive as to indicate a clear intent to abandon' and that intent 'may be proved by an infinite variety of acts.' 25 Am. Jur. 2d, Easements and Licenses § 103, pp. 507-08. Further, it states the intent must be 'neither to use nor to retake the property' and the act must be 'clear and unmistakable' and it must show a 'purpose to repudiate . . . ownership.' It claims that 'relinquishment of the possession' is not an abandonment as the act must indicate a lack of any interest in the property. 1 Am. Jur. 2d, Abandoned, . . . Property § 16, pp. 16-17." 6 Kan. App. 2d at 389.

In the case before us a railroad official (formerly with Rock Island and now with defendant railroad) testified unequivocally that neither railroad ever had any intent to abandon the property.

Plaintiff argues non-use between 1968 and 1984 (date of suit) plus receipt of the letter by him from Rock Island stating it would not cut down the weeds render the trial court's refusal to find abandonment erroneous. Plaintiff's own testimony relative to the railroad's attempted usage of the property in 1980 is inconsistent with his claim of abandonment. The trial court's finding there had been no abandonment is supported by substantial evidence and will not be disturbed on appeal.

ESTOPPEL

Plaintiff argues that by its conduct the railroad is estopped from claiming ownership in the property.

Equitable estoppel exists when a party, by its acts, representations, admissions, or silence, induced another party to believe certain facts existed upon which it detrimentally relied and acted. *Turon State Bank v. Bozarth*, 235 Kan. 786, 789, 684 P.2d 419 (1984).

After the railroad declined to cut the weeds in 1969, plaintiff cleaned up the property and has used it for his own purposes since that date. Additionally, he has paid the real estate taxes on the property. As the owner of the servient estate in the property, he had the right to use the property for any purpose which does not interfere with the rights of the holder of the dominant estate (the railroad). We conclude the trial court did not err in holding the doctrine was inapplicable under the facts herein.

The judgment is affirmed.

HERD, J., dissenting: I concur that adverse possession and estoppel are not applicable to this case. However, I would apply the objective test and hold the railroad abandoned its easement by removing its livestock pens (the use to which it had put its easement), permitting the property to become overgrown with weeds, notifying Miller in writing it would not maintain the property and failing to pay the taxes. I would reverse.

SCHROEDER, C.J., and LOCKETT, J., join the foregoing dissenting opinion.