No. 65,384

WILLIAM GAUGER, *Appellant*, v. STATE OF KANSAS, STEVEN J. DAVIES, Secretary of Corrections of the State of Kansas, and RAY ROBERTS, Director of the Kansas State Penitentiary, Lansing, *Appellees*.

(815 P.2d 501)

Opinion filed July 12, 1991.

*Blaise R. Plummer*, of Carson & Fields, of Overland Park, argued the cause and was on the brief for appellant.

*Linden G. Appel*, special assistant attorney general, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

ABBOTT, J.: William Gauger brought what amounts to an inverse condemnation action against the State of Kansas. Gauger claims title to a strip of land 100 feet in width and 2,673 feet in length, comprising 6.13 acres, which is bounded on three sides (100 feet abuts a public road) by land owned by the State of Kansas and used by the Kansas State Penitentiary (KSP).

The parties filed cross-motions for summary judgment. The district court granted the State's motion, finding that Gauger had no interest in the land to be taken. Gauger appeals.

For purposes of this appeal, the parties agree on the following facts, except as noted:

The strip of land in question is in the southeast quarter of section 19, township 9 south, range 23 east, which, at one time, was owned by Henry T. Green.

The west half (50 feet by 2,673 feet) of the disputed strip was deeded "for railroad right of way" by Green to the Union Pacific Railway Company on May 20, 1885. The Green heirs also quit-claimed their interest in the west half of the strip to the Union Pacific on December 12, 1887.

On August 15, 1978, the Union Pacific filed in the office of the Register of Deeds of Leavenworth County a statement of abandonment of this 100-foot strip.

The east portion of the strip was condemned by the Leavenworth and Olathe Railway Company on January 20, 1887. The parties agree that Kansas City, Northwestern Railroad Company acquired this interest from the Leavenworth and Olathe Railway Company.

The rest of section 19 was deeded by the Greens to KSP on April 10, 1903, "except that part thereof occupied as railroad right of way." At the time of this transfer, the Union Pacific and Kansas City, Northwestern railroads were occupying their rights-of-way.

Kansas City, Northwestern Railroad Company went into bankruptcy in the 1940s. The register of deeds' records show that Kansas City, Northwestern's land (the east strip) was conveyed, pursuant to a tax sale, by sheriff's deed on June 19, 1943, to E. J. Cowling.

E. J. Cowling, by quitclaim, deeded his interest in the east strip to William Gauger on September 30, 1980. Gauger re-deemed the property from the Leavenworth County Treasurer by paying all charges for back taxes and obtained a certificate of redemption.

Gauger claims an interest in and to Union Pacific's 100-foot strip because the Union Pacific abandoned its right-of-way by

disclaimer. He further claims the property reverted to adjoining landowners—50 feet to KSP and 50 feet to Cowling.

In granting the defendants' motion for summary judgment, the trial court said:

"From the above-noted facts, the Court makes the following conclusions:

"1. Kansas has long held that a railroad's acquisition of land for right-of-way purposes through condemnation vests the railroad with only an easement. The holder of the fee-title may use and occupy the property for any purpose that does not interfere with the railroad's use of the property. *Miller v. St. Louis, Southwestern Railway Company*, 239 Kan. 198 [, Syl. ¶ 1, 718 P.2d 610] (1986).

"2. When land is acquired for railway purposes it is immaterial whether the railway company acquired by right-of-way deed or other conveyance, or by condemnation. If or when it ceases to be used for railway purposes, or if such use never materialized, the land concerned returns to its prior status as an integral part of the freehold to which it belonged prior to its subjection to use for railway purposes. *Abercrombie v. Simmons*, 71 Kan. 538 [, 81 Pac. 208] (1905); *Barker v. Lashbrook*, 128 Kan. 595 [, 279 Pac. 12] (1929); *Danielson v. Woestemeyer*, 131 Kan. 796 [, 293 Pac. 507] (1930).

"3. Land acquired for a right-of-way for a railroad or other public purposes continues to be the property of its fee-title owner. Its acquisition and use for the public purpose subjects it to a servitude which may and commonly does deprive the owner of the fee of all beneficial use of it. But if or when the purposes which related to the acquisition have been terminated the burden of servitude is lifted from the land and the owner of the basic fee returns to full dominion. *Federal Farm Mortgage Corp. v. Smith*, 149 Kan. 789 [, 89 P.2d 838] (1939).

"4. Exceptions to the above-noted rules recognized in *Danielson v. Woestemeyer*, 131 Kan. 796 (1930), and *Nott v. Beightel*, 155 Kan. 94 [, 122 P.2d 747] (1942), are distinguishable from the facts of the present case.

"5. Whether an abandonment has occurred is a question of intent. To constitute abandonment of a railroad right-of-way there must be a uniting of intent to renounce all interest in the right-of-way with a clear and unmistakable act to carry out that intent. *Miller v. St. Louis, Southwestern Railway Company*, 239 Kan. 198, Syl. ¶ 2 (1986); *Martell v. Stewart*, 6 Kan. App. 2d 387, Syl. ¶ 2 [, 628 P.2d 1069] (1981). The parties to this action apparently are in agreement that the rights-of-way in question have been abandoned. There appears no dispute between them on this issue. However, whether an abandonment of the rights-of-way in question has occurred is not material to disposition of this case. The controversy between the parties relates to their respective claims to an interest in the property, not its use.

"6. Plaintiff's claim to the Kansas City Northwestern Railroad right-of-way (50 feet by 2,673 feet) is derivative of a sheriff's deed to that property to

his predecessor in title. The sheriff's deed was granted as a result of tax foreclosure proceedings.

"7. Plaintiff's claim to one-half of the Union Pacific Railroad right-of-way (50 feet by 2,673 feet) is dependent on the strength of his claim to the Kansas City Northwestern Railroad right-of-way because plaintiff claims one-half of the Union Pacific right-of-way by reversion to his adjoining property, the Kansas City Northwestern right-of-way.

"8. Ordinarily, a sheriff's deed as a result of a tax foreclosure for sale vests in the purchaser a fee simple title. However, this title is subject to valid easements of record in use and covenants running with the land. Given the Court's earlier conclusions that the nature of the interest acquired in the right-of-way is an easement which reverts to the servient estate upon abandonment leads to the conclusion that plaintiff did not acquire an interest in the Kansas City Northwestern right-of-way which would support his claim of inverse condemnation. This conclusion is further supported by the long standing and important policy expressed in *Abercrombie* of disallowing long strips of land acquired for railroad rights-of-way to be severed from the surrounding land and conveyed. It would be inconsistent to adopt a rule which would provide that a railroad cannot abandon its use of the right-of-way and sell off the land voluntarily, but provide that if the railroad involuntarily surrenders the right-of-way through tax foreclosure that such tract may be freely conveyed and severed from the surrounding land.

### "CONCLUSION

"1. Plaintiff does not have a protected interest in the Kansas City Northwestern Railroad right-of-way which could be subject of a 'taking' and support a claim for inverse condemnation.

"2. Since plaintiff's claim to an interest in the Union Pacific Railroad right-of-way is derivative of his interest in the Kansas City Northwestern right-of-way, he likewise does not have an interest in the Union Pacific right-of-way which could be subject of a 'taking' and support a claim for inverse condemnation.

"3. Judgment is entered in favor of the defendant."

Plaintiff first argues that the trial court erred in holding that he has no interest in the property.

Here, it is essentially undisputed that the Kansas City, Northwestern Railroad acquired land for right-of-way purposes through condemnation. In the most recent case on point, this court stated, "A railroad's acquisition of land for right-of-way purposes through condemnation vests the railroad with only an easement." *Miller v. St. Louis, Southwestern Ry. Co.*, 239 Kan. 198, Syl. ¶ 1, 718 P.2d 610 (1986).

In *Pratt v. Griese*, 196 Kan. 182, Syl. ¶ 1, 409 P.2d 777 (1966), this court said, "An easement for a railroad right of way is limited

by the use for which the easement is acquired, and when that use is abandoned the easement is terminated and the property reverts to the owner of the servient estate."

Green transferred only a right-of-way to the railway. The initial question is who became the owner of the servient estate. Plaintiff argues that, when Green deeded the land to KSP, Green excepted the land lying under the railroad right-of-way by virtue of the language in the deed "except that part thereof occupied as railroad right of way."

In *Abercrombie v. Simmons*, 71 Kan. 538, 81 Pac. 208 (1905), this court considered whether a railroad can convey land to a third party it acquired as railroad right-of-way. This court reasoned as follows:

"The statutes recognize that land for a right of way may be acquired by purchase as well as by compulsory proceedings. When so purchased for that purpose does the railroad company hold a higher or better right than where it is acquired by virtue of eminent domain? May a railroad company purchase a strip of land extending a great distance through the country and over many farms, abandon the enterprise, and then sell the strip to those who will put it to a wholly different use—one that might be both obnoxious and menacing to the adjoining owners? Where an absolute and unqualified fee-simple title is acquired by a railroad company it may of course, in the absence of express or implied restrictions, be conveyed to another. After stating this rule Judge Elliott remarks:

'But where there is an implied restriction, as is often the case in regard to the right of way, or the like, of a railroad company, the grant does not ordinarily vest a fee in the company, but vests such an estate, usually an easement, as is requisite to effect the purpose for which the property is required. Where the grant is of "surplus real estate," as it is often called, that is of real estate not forming part of the railroad or its appendages, a deed effective to vest a fee in a natural person will vest that estate in a railroad company.' (2 Ell. Rail. § 400.)

. . . .

"Whatever its name, the interest was taken for use as a right of way, it was limited to that use, and must revert when the use is abandoned.

". . . The conclusion is that the plaintiff acquired no interest in these lands by the attempted conveyance by the railroad company to him, and, therefore, that the judgment of the district court is affirmed." 71 Kan. at 542-47.

In *Roxana Petroleum Corp. v. Jarvis*, 127 Kan. 365, 273 Pac. 661 (1929), this court construed deeds containing the expressions "less railroad right of way" and "excepting railroad right of way"

and held the deeds conveyed the grantors' interest in the right-of-way tract and title vested in the owners of the tract at the time the right-of-way was abandoned.

The same result was reached concerning land in the same Kansas town (Oxford) and on the same right-of-way in *Roxana Petroleum Corporation v. Sutter*, 28 F.2d 159 (8th Cir. 1928).

In *Barker v. Lashbrook*, 128 Kan. 595, 279 Pac. 12 (1929), this court dealt with the issue of who owned an abandoned railroad right-of-way as between the grantor of a deed that transferred 120 acres "less . . . 3.81 acres taken by the Kansas City, Wyandotte & Northwestern Railway" and the then-present owners of the 120-acre tract.

This court, in holding title to be in the then-present owners, said:

"A reservation is always construed more strictly than a grant (18 C.J. 344), and it is difficult to conclude that businesslike people, able to own, sell and buy land, could reasonably have had in mind at the time of the sale and purchase the leaving of a long, narrow strip of land through the 120-acre tract that was to remain the absolute property of the grantor in the happening of a very possible contingency. In [*Bowers v. Atchison, T. & S. F. Rly. Co.*, 119 Kan. 202, 237 Pac. 913 (1925),] this is spoken of as being so absurd and unreasonable as even to be against public policy.

'The deed was to be interpreted most favorably to the grantee. The probability that the grantor would purposely deprive his grantee of the benefit of the servient soil, and reserve what in the great majority of instances would be of no use to the grantor, was always slight. Experience revealed that separate ownership of long, narrow strips of land distinct from the territory adjoining on each side was prolific of private dispute and public disturbance, and public policy became an important factor in the interpretation. Therefore it became settled doctrine that a deed of land abutting on a road passes a moiety of the road, unless intention not to do so be clearly indicated.' (p. 204.)

"The following is from the opinion of Justice Taft on this question, as found in *Paine v. Consumers' Forwarding & Storage Co.*, 71 Fed. 626, 632:

'The evils resulting from the retention in remote dedicators of the fee in gores and strips, which for many years are valueless because of the public easement in them, and which then become valuable by reason of an abandonment of the public use, have led courts to strained constructions to include the fee of such gores and strips in deeds of the abutting lots. And modern decisions are even more radical in this regard than the older cases.'

. . . .

"We conclude that the exception made in the deed here in question is not such as to make it expressly appear that a less estate than that which the grantor had was intended to be conveyed to the grantee. On the contrary, the language employed is that which is usually and ordinarily used to express the fact that a dominant estate to a certain portion of the land was already in another.

"The judgment is reversed and cause is remanded with directions to render judgment for the defendants." 128 Kan. at 598-99.

The rule is thus clear and of long standing that when the owner of real estate conveys land abutting on a railroad right-of-way, and the owner (grantor) owns the servient estate of the railroad right-of-way and the railroad the dominant estate for right-of-way purposes, the grantor passes to the grantee the servient estate, unless the intention not to do so is clearly indicated.

Here, Green transferred the quarter section to the State of Kansas by warranty deed "except that part thereof occupied as railroad right of way." The deed does not clearly indicate an intention not to transfer the servient estate. It merely points out to the grantee State of Kansas that a railroad right-of-way exists and the State takes the property subject to it. Obviously, the State would not knowingly purchase land for a state prison, knowing that if the right-of-way should be abandoned, some unknown party would own a strip of land 100 feet wide and 2,673 feet long running through the prison grounds. We conclude, as a matter of law, that the deed conveys the servient estate to the State of Kansas.

Once the servient estate passed to the State of Kansas, it could not be lost by adverse possession or a tax sale. Rights cannot be acquired in public lands by adverse possession or any statute of limitation. *Wood v. M. K & T. Railway Co.*, 11 Kan. 323, 348 (1873); *Janes v. Wilkinson*, 2 Kan. App. 361, 42 Pac. 735 (1895). Federal or state agencies and instrumentalities are immune from taxation by each other; thus, a county cannot tax the State of Kansas or sell the State's property at a tax sale and thereby vest title in a purchaser. *Cf. Devine v. City of Seward*, 174 Kan. 734, 737, 258 P.2d 302 (1953); *State, ex rel., v. Akers*, 92 Kan. 169, 205-06, 140 Pac. 637 (1914). For a general discussion of the subject, see *Thomson v. Pacific Railroad*, 76 U.S. (9 Wall.) 579, 19 L. Ed. 792 (1869); *Boeing Airplane Co. v. Commission of*

*Revenue and Taxation*, 153 Kan. 712, 113 P.2d 110 (1941); and 3 Am. Jur. 2d, Adverse Possession § 268.

The doctrine of *caveat emptor* applies to a purchaser at a tax sale (*Isenhart v. Powers*, 135 Kan. 111, 9 P.2d 988 [1932]) and, of course, those who take title through a tax sale purchase are subject to knowledge of that rule. Thus, the purchaser at the tax sale took title subject to the State of Kansas' servient estate and with knowledge that the statute of limitations and adverse possession cannot cause the State to lose title to real estate. One who buys at a tax sale buys only the interest of the owner. *Russell County v. Mahoney*, 69 Kan. 661, 77 Pac. 692 (1904). For the foregoing reasons, K.S.A. 58-2263 does not save the plaintiff.

The trial court did not err in holding title to the disputed tract to be in the State of Kansas.

Affirmed.