[Civ. No. 8267.    Fourth Dist., Div. One.    May 16, 1967.]

SALEM DEVELOPMENT CO., Plaintiff and Appellant, v.
ALAN D. ROSS et al., Defendants and Respondents.

Robert H. Green and Leonard Goldstein for Plaintiff and Appellant.

Guy, Smith & Wahl, Henry A. Fox, Beilenson & Leavy, Zad Leavy and Richard Jay Goldstein for Defendants and Respondents.

LAZAR, J. pro tem.*—This action arises out of a real property transaction between plaintiff Salem Development Co., a corporation (Salem) and defendant Ardmore Development Co., a corporation (Ardmore). The other defendants participated not as principals, but in secondary capacities in the transaction between Salem and Ardmore. Defendants Apex Realty and Management Co., Inc. a corporation (Apex) and Marc Andrews (Andrews) were the real estate brokers; defendant Alan D. Ross (Ross) was attorney for Ardmore and its president defendant Leonard B. Schneider (Schneider); defendant John White (White) was attorney for Salem and its president Salem D. Caplan (Caplan); defendant Michael Lotery, sued as Doe I, was a real estate salesman for Apex. Reduced to elemental facts, Salem, by virtue of options, had in escrow for purchase three parcels of real property which together constituted one highly desirable parcel of real estate. Ardmore was willing to purchase the total property from Salem. Salem was unable to produce the money necessary to complete its purchase of the individual properties before the life of its options expired. Ardmore agreed to advance the necessary moneys and arranged financing for that purpose. Before the three Salem purchase escrows could be closed and the Salem sale escrow to Ardmore could be completed it was learned that an outstanding tax lien situation existed which would preclude Salem and Caplan from taking title to the real property if the tax lien was to be avoided. Thereupon the transaction was again changed for accommoda-

---

*Assigned by the Chairman of the Judicial Council.

tion to the two contingencies which had developed, i.e., lack of funds and the tax lien.

Under the new arrangement Ross was individually designated to take title in the three purchase escrows and as seller in the Ardmore purchase escrow. The escrows were closed, resulting in the execution by Salem and Caplan of three promissory notes, one to Apex for $46,183; one to Marc Andrews for $16,200, both representing real estate commissions, and a third to Ardmore for $61,200, representing in the main two years interest and points on the loan negotiated by Ardmore for purchase of the property and secured by Ardmore's note and first deed of trust to the lender. Ardmore also executed to Ross, individually, a note in the amount of $183,749.26 secured by a second deed of trust which represented the balance required from Ardmore for close of its escrow for purchase of the property.

Each of the commission notes was payable, with interest, in one year. The Salem and Caplan note to Ardmore for $61,200 was payable without interest in quarterly payments of $7,650 commencing four months after execution. This last mentioned note was in usual form with the recitation that it was secured by "a collateral trust agreement of even date."

The so-called "Collateral Trust Agreement" (Agreement)[1] (set forth in full in the footnote) is the center of this appellate controversy. We point out that the Ardmore note mentioned therein, which was to secure the payment of the three Salem-Caplan notes, by its terms was not payable either as to principal or interest until its maturity five years after December 12, 1961. It is to be kept in mind that the payment called for by the Ardmore second deed of trust note would not become due until long after payments were required on the three Salem-Caplan notes and in no event could payment thereof be compelled as it was a purchase money obligation.

No payment was made by Salem-Caplan to Ardmore when the first quarterly payment became due. Events took their course; Ardmore required Ross to make demand upon Salem and Caplan; the demand was not met or answered; Ross caused the Ardmore note to be cancelled by the title insurance company trustee under the second deed of trust and the second deed of trust to be reconveyed to Ardmore; Ardmore made direct arrangements with Apex and Andrews for ultimate payment of the commissions owing to them.

A few days after Ross gave effect to the Agreement by

---

[1]See footnote [1] at end of opinion.

causing reconveyance of the second deed of trust to Ardmore, Ardmore transferred title to Stealax Investment Company, a partnership composed of Ross and his two law partners. Stealax paid $32,000 to Ardmore. Stealax thereafter "warehoused" the property for Ardmore until some 14 months later the property was again transferred to Ardmore. Ardmore executed in exchange a note and deed of trust for $175,000, of which $100,000 represented the amount invested during the intervening time by Stealax and $75,000 represented the apparent profit. (This post-Agreement course of action upon the part of Ross [through the partnership] is urged by Salem as a breach of fiduciary obligation, but we find the point to be immaterial in view of the views hereinafter expressed and, in any event, without merit.)

The complaint was framed in several alleged causes of action relating to rescission, fraud, specific performance, breach of trust and damages. Upon the conclusion of plaintiff's case the court gave judgment in favor of all defendants except Ross, Ardmore and Schneider and further ruled as to the last named defendants that plaintiff had failed to make out a case of fraud against them. The action proceeded as to the three remaining defendants upon the issues of breach of trust by Ross in performing under the Agreement and of illegal forfeiture within its terms. The trial court found in favor of the defendants on both issues and rendered judgment accordingly.

In spite of the involved and in certain aspects uncertain facts presented by the record, we view the case somewhat more simply than did the parties during the trial or in their briefs. In its simplest outline Salem contracted to sell a parcel of real property to Ardmore. For lack of funds Salem was unable to acquire title and Ardmore included in its payments into escrow the funds necessary. Salem in turn agreed to pay for two years the interest charges on the money borrowed by Ardmore (in substance, the $61,200 note). For strategic reasons (the tax lien) Salem could not have title pass in its name and Ross was designated Salem's nominee. For the same reason, we assume, Ross took title individually and not as trustee, for the latter designation would have invited the question "For whom?" At the same time Ross did designate himself as "trustee" with respect to the Agreement.

We do not propose to consider at length the contentions of either side. We summarize them by saying plaintiff contends Ross was guilty of a breach of trust in the manner he performed under the Agreement; that the trial court erred in

admitting testimony designed to vary the terms of the Agreement and the fiduciary obligation to which Ross as "trustee" was subject; further that cancellation of the Ardmore note to Salem and of the deed of trust securing it was a forfeiture not allowed by law.

Defendants, on the other hand, contend that Salem had no interest in the property or the Ardmore note and second deed of trust once Ross was designated Salem's nominee and that the Agreement should be likened to a conditional contract of sale whereby Salem had the privilege of purchasing the note and second deed of trust by paying off the three notes for which they purported to be security. Defendants further contend that even if a forfeiture is involved the plaintiff has not been damaged for the reason the Ardmore note and second deed of trust were without value.

We first point out that we are concerned with but a single transaction, the sale of a parcel of real property. It has several elements: the acquisition of the three parcels, the sale of the accumulated parcel to Ardmore, and the deferred financing evidenced by the Agreement and its included notes. The relation of Salem and Ardmore is founded on their escrow agreement and the Agreement.

The intervention of Ross as title holder in place of Salem meant only that he was representing Salem's equitable interest in the property. Salem had paid, in fact, at least $13,500 to the original owners of the property for that interest. Nowhere does it appear nor does anyone contend that Ross took title as nominee of Salem for any personal interest in the property. The record compels the conclusion that Ross was acting either for Ardmore or Salem at all times before Ardmore sold to Stealax of which Ross was a partner. That Ross was both nominee of Salem in the escrow and "trustee" in the Agreement need be regarded as no more than a coincidence as far as the rights of the parties are concerned. The circumstances particularly require that we give consideration to the whole relationship of the parties and not solely to the Agreement as a separate written contract disassociated from the immediately earlier relationship between them. (*Harm* v. *Frasher*, 181 Cal.App.2d 405, 412-413 [5 Cal.Rptr. 367]; *Rosen* v. *E. C. Losch Co.*, 234 Cal.App.2d 324, 331 [44 Cal. Rptr. 377]; 1 Witkin, Summary of Cal. Law (1963) Contracts, §§ 217-219, pp. 247-249.) "[M]ere verbal formulas, mere words and the ingenuity of contractual expression dreamed up by ingenious business men or their lawyers

cannot be used to prevent a showing of the real nature of the transaction. It is substance and not form that controls." (*Shafford* v. *Otto Sales Co., Inc.,* 119 Cal.App.2d 849, 860 [260 P.2d 269].)

When the Salem-Ardmore escrow closed and Ardmore executed its note and second deed of trust to Ross, the situation continued to be what it had been before: Ross, as nominal payee of the note and beneficiary of the deed of trust (defendants make no claim Ross had any personal interest in either) was still the representative of Salem with respect to Salem's beneficial interest in the instruments. Ross at this point could not have been Ardmore's representative because that would have meant Ardmore had executed a note and deed of trust to itself, an act of legal impotency. Furthermore, it also would mean that none of the three "secured" notes executed by Salem was made with consideration. The record must be construed to mean that it was the intention to create a legally valid note and second deed of trust. Upon that basis Salem's equitable interest in the real property passed into an equitable interest in the note and deed of trust from Ardmore to Ross, and as the Agreement was put into effect Ross assumed the two hats of legal owner of the Ardmore note for the benefit of Salem and pledgeholder thereof for the benefit of Salem, Ardmore, Apex and Andrews. (See *Bonaccorso* v. *Kaplan,* 218 Cal.App.2d 63, 68 [32 Cal.Rptr. 69].)

We are unable to apprehend that the Agreement constituted anything more or less than a pledge agreement as defined in Civil Code, section 2987, then in effect, which read: "Every contract by which the possession of personal property is transferred, as security only, is to be deemed a pledge."

It would be laboring the point to do more than refer to the very language of the subject instrument to establish the applicability of the quoted section. To hold otherwise would be to honor form over substance in the context of the entire relationship of the parties.

It follows that the code sections applicable to pledges applied to the Agreement except as it was within the power of the parties to provide otherwise or to waive them. By statute "A pledgee cannot sell any evidence of debt pledged to him, except the obligations of governments, states, or corporations; but he may collect the same when due." (Civ. Code, § 3006.)

In the absence of valid provision in a pledge agreement for some other remedy (as the law stood before the adoption of the Commercial Code) section 3006 is compulsory.

By its terms, however, the Agreement provides only for a forfeiture of Salem's interests under the Agreement. ▓▓ In this connection we must advert to Civil Code, section 2889, which forbids such provision in these words: "All contracts for the forfeiture of property subject to a lien, in satisfaction of the obligation secured thereby, and all contracts in restraint of the right of redemption from a lien, are void."

A forfeiture is invalid not only directly but in the guise of a private sale without notice not carried out in good faith. (*Lowe* v. *Ozmun,* 3 Cal.App. 387, 393-394 [86 P. 729].) The forfeiture provided in the Agreement (¶ 6) must be disregarded in assessing the rights and remedies of the parties and since no other and valid contractual arrangements are contained in the Agreement, the general statutory provision governing pledges must be applied. ▓▓ Since the pledge was evidence of debt the pledgeholder's responsibility was to hold and collect it when due (Civ. Code, § 3006).

▓▓ The record discloses, however, that the pledgeholder (Ross) delivered the Ardmore note to the trustee under the deed of trust for cancellation and reconveyance of the deed of trust and that these objectives were accomplished. That conduct constituted a conversion of Salem's interest in those documents (*Lowe* v. *Ozmun, supra,* 3 Cal.App. 387).

▓▓ The measure of damages for conversion of a pledged note and deed of trust is the value of the security for the note as of the date of conversion (*Knudsen* v. *Hill,* 227 Cal.App.2d 639, 642-643 [38 Cal.Rptr. 859]; Civ. Code, §§ 3356 and 3336). Here the only testimony adduced by defendants related to the value of the note and deed of trust if put up for sale. No evidence was introduced to show what value the real property had in its status as security under the second deed of trust.

The foregoing views require us to hold that the findings that defendant Ross violated no fiduciary duty or any duty which may have been owed to plaintiff; that the Agreement did not provide for a forfeiture; that plaintiff never acquired an interest in the Ardmore-Ross note for $183,749.26; that Ross performed all of the acts required of him by the terms and conditions of the Agreement; that plaintiff was not damaged are not supported by the evidence; and that the judgment based thereon insofar as it relates to Ross is without support.

In the light of *Revert* v. *Hesse,* 184 Cal. 295, 300-301 [193 P. 943], and of the letter of April 26, 1962 (Plaintiff's

Exhibit 28) from Ardmore to Ross whereby Ross was directed to cancel the Ardmore note and reconvey the second deed of trust and further Ardmore agreed to hold Ross harmless and to assume any liability arising from "[that] directive," we affirm the judgment as to defendant Schneider and reverse the judgment as to the defendants Ross and Ardmore.

Appellant to recover costs on appeal.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied May 31, 1967, and the petition of respondent Ross for a hearing by the Supreme Court was denied July 12, 1967.

Footnote (1):  COLLATERAL TRUST AGREEMENT

THIS AGREEMENT by and between ARDMORE DEVELOPMENT CO., (Ardmore herein), SALEM DEVELOPMENT CO., (Salem herein), S. D. CAPLAN, individually, (Caplan herein), APEX REALTY AND MANAGEMENT CO., INC., (Apex herein), and MARC ANDREWS REALTY (Andrews herein.

WITNESSETH:

WHEREAS, Salem as Seller, and Ardmore as Buyer, have executed escrow instructions #5429997 at Title Insurance and Trust Company, Los Angeles, California, on 11-17-61, and have executed amendments thereof, for the purchase of approximately 27 acres, more or less, In the City of Anaheim, California; and

WHEREAS, Apex and Andrews are licensed real estate brokers on behalf of their principals, in the sole and purchase of said property; and

WHEREAS, Salem and Caplan individually have agreed to execute and deliver promissory notes at close of escrow as follows:

To: Apex $46,183.00 for its commission
To: Andrews $16,200.00 for its commission
To: Ardmore $61,200.00 for payment of financing charges which Ardmore will be required to expend; and

WHEREAS, at close of escrow Ardmore was to execute a note secured by a second deed of trust in favor of Salem in the amount of $183,749.26; and

WHEREAS, the parties had intended to secure performance of the three aforementioned notes by an assignment of said second deed of trust; and

WHEREAS, Ardmore, Apex and Andrews desire to achieve a more secured position for the protection of the aforementioned obligations; and

NOW, THEREFORE, IT IS AGREED:

1. Salem agrees to designate Alan D. Ross as its nominee under escrows 300474, 300475 and 300476 at Title Insurance and Trust Company, Santa Ana, California, and Caplan will execute said three promissory notes in favor of Apex, Andrews and Ardmore and deliver same to Alan D. Ross, as trustee. Mr. Ross, upon close of the aforementioned escrows, shall deliver the notes to the respective beneficiaries. In the event escrow fails to close, the notes shall be returned to Salem Development Co.

2. Salem and Ardmore agree that Alan D. Ross will be substituted as Seller in lieu of Salem in escrow #5429997 at Title Insurance and Trust Company, Los Angeles, California.

3. Alan D. Ross, as trustee, upon close of escrow shall receive a note secured by second deed of trust in the amount of $183,749.26 executed by Ardmore Development Co. Mr. Ross will apply all payments received on the $183,749.26 note to payment of the aforementioned three notes in the manner directed by the beneficiaries thereof in writing.

4. Ross agrees to hold said note and second deed of trust, as trustee, to secure payment of said 3 notes and upon being advised by the beneficiaries of the aforementioned three notes that payment has been made in full in accordance with the express terms of said 3 notes, Ross agrees to assign and transfer the note and deed of trust in the face amount of $183,749.26 to Salem.

5. Ross agrees to pay all amounts received on the aforementioned note and second deed of trust to the beneficiaries of the aforementioned three notes in the same proportion that the principal unpaid amount of each note bears to the total unpaid amount of said 3 notes.

6. In the event of default in the performance of any term, condition, or provision of any or all of the Apex, Andrews and Ardmore notes, upon notice to that effect from the beneficiary or beneficiaries to the Trustee, Trustee shall give Salem 10 days' written notice to correct said default within said 10 day period, and in the event said default is not corrected within said period, Salem shall forfeit (except as indicated in Paragraph 6 below) any and all right, title and interest in said note and second deed of trust, and Trustee shall then hold said note and deed of trust as security for payment of the Apex, Andrews and Ardmore notes. However, it is expressly agreed that said beneficiaries are not limited to the security of the notes held by Trustee and that Salem and Caplan's liability is in no way limited to the security of the note and second trust deed.

7. In the event of Salem's default on said foregoing notes, Salem shall have no further interest in the $183,749.26 note secured by deed of trust; however, Salem shall receive a return of all moneys paid by Salem, if any, on said three notes when and if said $183,749.26 note is paid off, or sold, or foreclosed, and after first paying in full from said sale or foreclosure proceeds the full amount of the aforementioned 3 Promissory Notes, attorney's fees and costs of sale, and any other expenses incurred in liquidating said note and deed of trust.

8. Trustee agrees to transfer the note and second deed of trust to Ardmore, upon demand of Ardmore, in which event Ardmore shall perform Trustee's obligations hereunder.

9. In the event any of the aforementioned 3 notes is cancelled and/or discharged, the beneficiary thereunder shall have no right, title or interest in the note and second deed of trust.

**10.** In the event Salem forfeits its rights to the note and second deed of trust and in the event the 3 aforementioned promissory notes have been cancelled or discharged, at that time Trustee shall dispose of the note and second deed of trust and proceeds thereof as may be directed by Ardmore, subject to the limited recoupment rights of Salem as set forth in Paragraph 7 hereof.

**11.** Trustee agrees to hold the aforementioned note and second deed of trust in accordance with this agreement and to act on written instructions of the parties. Trustee is expressly relieved of liability hereunder in his capacity as trustee, as long as trustee acts in accordance with this agreement. The parties agree to hold Trustee harmless from any liability hereunder. Salem and Ardmore in addition agree to hold Trustee harmless for any liability resulting from his being named as Buyer and *Seller in the aforementioned escrow.*

**12.** The parties hereby expressly agree that this agreement, when signed by all parties, expressly revokes any other agreements containing provisions conflicting with this agreement and they agree that this agreement replaces the Collateral Trust Agreement dated 12-5-61. The parties further expressly agree that the Collateral Trust Agreement referred to in aforementioned Ardmore, Apex and Andrews notes means this agreement and **not** the agreement dated 12-5-61.

**SALEM DEVELOPMENT CO.**

By

**ARDMORE DEVELOPMENT CO.**

By

**MARC ANDREWS REALTY**

By

**APEX REALTY AND MANAGEMENT CO., INC.**

By

The undersigned agrees to act as Trustee.

ALAN D. ROSS

Dated: This 11 day of December, 1961.

The collateral trust agreement dated 12-11-61 between the undersigned parties is hereby amended in the following respects:

1. The parties acknowledge execution and delivery to Trustee of a promissory note dated 12-11-61 by Salem and Caplan individually to Ardmore Development Co. in the sum of $6750.00 payable 1-12-61 plus interest of 10% per annum.

2. The parties expressly agree the $6750.00 note ___ shall be subject to the collateral trust agreement, shall be secured by the note and second deed of trust referred to therein and shall be equated in all respects to the Apex, Andrews, and Ardmore notes referred to therein. Accordingly, should default occur with respect to payment of the $6,750.00 note Caplan and Salem shall forfeit their rights with respect to the note and 2nd deed of trust in the manner stated in the collateral trust agreement

Salem Development Co.        Ardmore Development Co.
by: _____     by: _____

Marc Andrews Realty     Apex Realty & Management Co., Inc.
by: _____     by: _____

_____
Trustee

Dated: December 12, 1961.