No. 58,649

GENE R. MOHR and TRI-COUNTY FARM EQUIPMENT CO., *Appellees*,
v. STATE BANK OF STANLEY, *Appellant*.

(734 P.2d 1071)

*Alan V. Johnson*, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, argued the cause, and *Michael E. Francis*, of the same firm, and *R. Scott Beeler*, of Gage and Tucker, of Overland Park, were with him on the briefs for the appellant.

*Randolph G. Willis*, of Watson, Ess, Marshall & Enggas, of Olathe, argued the cause, and *Kenneth C. Jones*, of the same firm, and *Thomas M. Cunningham*, of the same firm, of Kansas City, Missouri, were with him on the brief for the appellees.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the State Bank of Stanley from a judgment in a conversion action entered against it and in favor of the plaintiffs, Gene R. Mohr and Tri-County Farm Equipment Company, in the total amount of $422,650.26, following a jury trial in the District Court of Johnson County. The numerous issues raised on appeal will be stated and discussed separately in this opinion.

Tri-County Farm Equipment Company is a Missouri corporation qualified to do business in Kansas. Its principal activity was the sale of farm machinery at Olathe. Gene Mohr and James Loyd each owned 50% of the stock in Tri-County. The First National Bank of Olathe, Kansas, was designated as its depository bank. Tri-County's corporate resolution provided that all checks, drafts, or other orders for payment of money could be endorsed for deposit by stamp or personal endorsement of any

officer or employee and deposited in the First National Bank. Tri-County had no banking relationship with the State Bank of Stanley.

Mohr and Loyd also started a leasing company, known as Mohr-Loyd Leasing, a partnership, for the purpose of leasing farm equipment. (For further background on these organizations see *Executive Financial Services, Inc. v. Loyd,* 238 Kan. 663, 715 P.2d 376 [1986].)

Additionally, Loyd had his own oil business known as Earthborn Energy. Mohr had no ownership interest in Earthborn Energy. So far as we are aware, Loyd was the sole owner and operator of Earthborn Energy, and its bank accounts were maintained in the State Bank of Stanley and in the First National Bank of Olathe.

Between January 25, 1982, and December 2, 1982, Loyd endorsed eight checks which were payable to Tri-County. He deposited those checks, not in the Tri-County account at the First National Bank of Olathe, but in Loyd's Earthborn Energy account in the State Bank of Stanley. Similarly, on August 25, and October 25, 1982, Loyd endorsed two checks which were the property of Mohr-Loyd Leasing, and deposited those checks in his Earthborn Energy account.

This action for conversion was commenced by Mohr and Tri-County. Mohr, as the successor in interest to Mohr-Loyd Leasing, sought the proceeds of the two checks payable to the leasing company which it never received. Tri-County brought suit on the eight checks made payable to it, the proceeds of which it never received, contending the State Bank of Stanley converted those checks. The jury returned a verdict in favor of Tri-County in the amount of the eight checks payable to it, $186,615.06, plus punitive damages of $76,000. It also returned a verdict in favor of Mohr for the two checks payable to Mohr-Loyd Leasing, in the amount of $57,455.92, plus punitive damages of $24,000. The trial court added 10% prejudgment interest to the actual damages (the face amount of all of the checks) in the total sum of $78,579.28. The Bank appeals.

For its first issue, the Bank contends that as a matter of law, Loyd had implied or apparent authority to endorse and negotiate checks payable to Tri-County. It will be helpful at the outset to

summarize the agency principles pertinent to this issue. In *Shawnee State Bank v. North Olathe Industrial Park, Inc.*, 228 Kan. 231, 236-37, 613 P.2d 1342 (1980), Justice Fromme summarized these principles as follows:

"The law recognizes two distinct types of agencies, one actual and the other ostensible or apparent. The authority of an actual agent may be either express or implied. *Theis v. DuPont, Glore Forgan, Inc.*, 212 Kan. 301, 306, 510 P.2d 1212 (1973).

"It is an express agency if the principal has delegated authority to the agent by words which expressly authorize the agent to do a delegable act. It is an implied agency if it appears from the statements and conduct of the parties and other relevant circumstances that the intention was to clothe the agent with such an appearance of authority that when the agency was exercised it would normally and naturally lead others to rely on the person's acts as being authorized by the principal. An ostensible or apparent agency may exist if a principal has intentionally or by want of ordinary care induced and permitted third persons to believe a person is his or her agent even though no authority, either express or implied, has been actually conferred upon the agent. *Gardner v. Rensmeyer*, 221 Kan. 23, Syl. ¶ 1, 557 P.2d 1258 (1976); *Greep v. Bruns*, 160 Kan. 48, Syl. ¶ 4, 159 P.2d 803 (1945)."

In the earlier case of *Brown v. Wichita State University*, 217 Kan. 279, 286-87, 540 P.2d 66 (1975), *aff'd in part, vacated in part* 219 Kan. 2, 547 P.2d 1015 (1976), Chief Justice Fatzer considered the subject of implied agency. He said:

"To determine whether the record establishes an agency by agreement it must be examined to ascertain if the party sought to be charged as principal has delegated authority to the alleged agent by words which expressly authorize the agent to do the delegated act. If there is evidence of that character, the authority of the agent is express. If no express authorization is found, then the evidence must be considered to determine whether the alleged agent possesses implied powers. The test utilized by this court to determine if the alleged agent possesses implied powers is whether, from the facts and circumstances of the particular case, it appears there was an implied intention to create an agency; in which event, the relation may be held to exist, notwithstanding either a denial by the alleged principal or whether the parties understood it to be an agency. (*Rodgers v. Arapahoe Pipe Line Co.*, 185 Kan. 424, 345 P.2d 702.) In 2A C.J.S., Agency, § 52, p. 626, it is stated:

" 'An implied agency must be based on facts for which the principal is responsible. These facts must, in the absence of estoppel, be such as to imply an intention to create the agency, and the implication must arise from a natural and reasonable, and not from a forced, strained, or distorted, construction of them. They must lead to the reasonable conclusion that mutual assent exists, and be such as naturally lead another to believe in and to rely on the agency. The existence of the relation will not be assumed.

" 'While the relation may be implied from a single transaction, it is more readily inferable from a series of transactions.

" 'On the question of implied agency, it is the manifestation of the alleged principal and agent as between themselves that is decisive, and not the appearance to a third party or what the third party should have known. An agency will not be inferred because a third person assumed that it existed . . . .' "

Apparent agency is based on intentional actions or words of the principal toward third parties which reasonably induce or permit third parties to believe that an agency relationship exists. In the case before us, there were no actions by Tri-County and no words expressed on its behalf to the State Bank of Stanley to induce or permit it to believe that Loyd was the agent of Tri-County and authorized to deposit corporate checks in his own personal business account. The record indicates that the supervisor of tellers at the Bank did not even know of Loyd's position with Tri-County. The identity of the individual tellers who handled the deposits was not disclosed, so it is impossible to know if they were aware of Loyd's relationship with Tri-County. No corporate resolution of Tri-County was furnished to the State Bank of Stanley, no letters were written by Tri-County to the Bank, and Tri-County took no action of which the Bank was aware or upon which it relied. We find no basis in the evidence for the existence of any apparent agency.

Implied agency is based on an implied intention to create an agency. It arises upon facts for which the principal is responsible. It arises when, from the statements and conduct of the parties, it appears that the principal, or the principal and the "agent," intended to make it appear to others that the acts of the "agent" were authorized by the principal. We find no facts here supporting an implied agency. There is no evidence indicating an intention by Tri-County to make it appear that Loyd was authorized to deposit checks payable to it in his personal account. Similarly, we find no evidence of a like intention on the part of the partnership. Though Loyd may have intended to convey to the Bank the appearance that he was authorized by Tri-County and the partnership to endorse and deposit the checks, his intention alone is not sufficient upon which to base a finding of implied agency.

The Bank insists that the "powers of position" rule created the

necessary authority in Loyd to endorse and negotiate checks payable to the corporation. Basically it contends that because he was an officer and shareholder in the corporation, he was impliedly or apparently authorized to deposit corporate checks in his personal account. In support of this position, it cites *Executive Financial Services, Inc. v. Loyd*, 238 Kan. 663.

The pertinent part of the holding in *Executive Financial Services, Inc.*, was that Tri-County was bound by Loyd's signature on a guarantee contract because "generally a corporation is bound by contracts entered into on its behalf by its duly authorized officers or agents acting within the scope of their authority." 238 Kan. at 665. We noted in the opinion, however, that Loyd was authorized to sign all orders, contracts, and notes for the corporation. He was acting within the scope of his authority in guaranteeing the loan transactions, and in executing the contracts at issue in *Executive Financial Services, Inc.* In the case at bar, Loyd was specifically authorized to endorse checks payable to Tri-County, but his authority to endorse was coupled with a duty to deposit those checks in the corporate bank account in Olathe. The resolution gave him no authority to deposit checks made payable to Tri-County in his own personal bank account. We know of no case in which the "powers of position" rule has been held to give a corporate officer or an employee apparent authority to deposit checks payable to the corporation in the officer's or employee's personal account.

To the contrary, in *Aetna Casualty and Surety Co. v. Hepler State Bank*, 6 Kan. App. 2d 543, 630 P.2d 721 (1981), a case bearing some similarity to the one at hand, Chief Judge Foth said that the authority of an agent to sell goods of the principal and to make collections for the principal does not confer authority on the agent to endorse and cash checks made payable to the principal. A bank should be cautious in cashing such checks because:

"Barring exceptional circumstances, the general rule is that failure of a bank to inquire when an individual cashes a check made payable to a corporate payee and puts the money in his personal account is an unreasonable commercial banking practice as a matter of law." 6 Kan. App. 2d at 551.

Chief Judge Foth cited numerous cases supporting this rule, and we find support in other jurisdictions. See Annot., 23 A.L.R.4th

855, § 5(b). The facts in the case at bar do not require a conclusion that Loyd had, as a matter of law, implied or apparent authority to endorse Tri-County or Mohr-Loyd checks and deposit them in his personal business account at the Stanley State Bank. The trial court correctly denied summary judgment on this question.

As its next issue, the Bank contends that Tri-County was precluded, as a matter of law, from denying Loyd's authority to endorse and negotiate corporate checks. The Bank raised this defense before the trial court by way of motion for summary judgment, which the trial court overruled.

K.S.A. 84-3-404 provides in pertinent part that:

"Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it."

While the Uniform Commercial Code does not define "preclusion," paragraph four of the official U.C.C. Comment to K.S.A. 84-3-404 offers some guidance. It reads:

"The words 'or is precluded from denying it' are retained in subsection (1) to recognize the possibility of an estoppel against the person whose name is signed, as where he expressly or tacitly represents to an innocent purchaser that the signature is genuine; and to recognize the negligence which precludes a denial of the signature."

Tri-County's corporate records reveal numerous transactions from the corporation to Loyd. These include checks written on the corporate account payable to Loyd or to his other business accounts, Loyd's withdrawals from the cash drawer, and four checks payable to Tri-County but endorsed by Loyd and deposited in his Earthborn Energy accounts. All of these transfers were known by Tri-County and were recorded in Loyd's farming account, the L-Y Farms' account. They were noted as "debts" owed by Loyd to Tri-County. The Bank contends that Tri-County is precluded from denying that Loyd had authority to deposit its corporate checks into his personal business account because it had permitted such conduct on four occasions in the past. The checks written on the corporate account payable to Loyd or to his other business and his withdrawals from the cash drawer would have no bearing upon the question here at issue. The four checks payable to Tri-County, which were endorsed by Loyd and deposited in his personal account, were discovered by

Tri-County and were immediately noted as debts owed by Loyd to Tri-County. There is no showing that the Bank knew of these four checks or that it in any way relied upon them in accepting the eight checks which form a basis for Tri-County's action here.

The legal theories included as "preclusion" under the U.C.C. and the legal theories asserted by the defendant each require proof of different elements. Equitable estoppel exists when a party, by its acts, representations, admissions, or silence, induced another party to believe certain facts existed upon which it detrimentally relied and acted. *Miller v. St. Louis, Southwestern Ry. Co.*, 239 Kan. 198, 202, 718 P.2d 610 (1986). Here, there were no acts, representations, admissions, or silence by Tri-County which induced the Bank to believe that Loyd was authorized to deposit and cash checks made payable to Tri-County, and there was no detrimental reliance by the Bank. The Bank did not know of the discovery by Tri-County of the four checks endorsed by Loyd and did not know that the corporation had charged the amount of those checks as a debt by Loyd to the corporation. We find no equitable estoppel.

A defense of negligence is governed by K.S.A. 84-3-406. That section provides, in pertinent part, that:

"Any person who by his negligence substantially contributes to . . . the making of an unauthorized signature is precluded from asserting . . . lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in *good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business*." (Emphasis supplied.)

Thus, to establish a defense of negligence on the part of Tri-County, the Bank must prove not only its own good faith but also that it acted in accordance with reasonable commercial banking standards. As was noted in *Aetna*, 6 Kan. App. 2d at 551, the action of a bank in accepting the endorsement of checks made payable to a corporation and the depositing of the funds in the endorser's personal account is not a commercially reasonable banking practice. The failure of the Bank to follow reasonable commercial banking standards prevents the successful assertion of a negligence defense. Plaintiffs point to certain evidence as an indication that the Bank did not act in good faith. However, we need not reach that issue in view of our finding that the Bank did

not follow reasonable banking standards in accepting the eight checks from Loyd and in depositing the proceeds in his personal business account without making inquiry. The trial court did not err in overruling the motion for summary judgment on the preclusion issue.

The third issue is whether the trial judge erred in submitting the claims of Mohr, based on the two Mohr-Loyd Leasing checks, to the jury. Mohr successfully negotiated with the Bank of Stanley two loans for the partnership, Mohr-Loyd Leasing. Checks were issued by the Bank, one for $34,455.92 and the other for $23,000.00. The partnership never received the proceeds; Loyd deposited both checks in his Earthborn Energy account. Later, suit was filed by the Johnson County Airport Commission against the State Bank of Stanley, Johnson County Case No. 123284. Codefendants included the Bank, Mohr, Loyd, and Mohr-Loyd Leasing. The Bank filed a cross-claim against Mohr, seeking recovery on the loans to Mohr-Loyd Leasing. Mohr filed no claim against the Bank arising out of the loans and the embezzlement by Loyd of the check proceeds in that lawsuit.

The Bank contends here that Mohr's claim was a compulsory counterclaim in Johnson County Case No. 123284, and is barred pursuant to K.S.A. 1986 Supp. 60-213(a). That section provides in pertinent part:

"A pleading shall state as a compulsory counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ."

The Bank claims that it was error to submit these claims to the jury because they should have been asserted in the Johnson County Airport case, and were barred because not asserted. Mohr argues that because the Johnson County Airport case was subsequently dismissed, the claim on those two checks should not be barred. The Bank raised this early in this proceeding. The matter was argued, and Judge McWilliams, who was then presiding, ruled that the claim was barred. This was some 30 days before the Johnson County Airport case was dismissed. Mohr, thus, had ample notice and opportunity to raise the claim in the Airport case.

Mohr also argues that the claim, if asserted in the Airport case, would have been a cross-claim, not a counterclaim, and that cross-claims are permissive, not compulsory. This argument is not persuasive. While the claim would have been against a codefendant, Mohr and the Bank were adverse parties in the Airport case, and Mohr's claim arose out of the transaction which formed the basis of the Bank's cross-claim against him. In 3 Moore's Federal Practice ¶ 13.12[1] (2nd ed. 1985), we find this explanation:

"[I]f defendant X pleads a cross-claim against his co-party, defendant Y, the latter must plead as a counterclaim any claim which he (Y) has against X that arises out of the transaction or occurrence which is made the basis of X's cross-claim."

The Bank, as a codefendant with Mohr in the Airport case, was not obligated to assert a cross-claim against Mohr. Such action was permissive, not mandatory. Once a cross-claim was asserted, however, it became incumbent upon Mohr to file an answer to the cross-claim. See K.S.A. 60-207, -208. He then became subject to the compulsory counterclaim rule, K.S.A. 1986 Supp. 60-213(a), which states:

"A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ."

K.S.A. 1986 Supp. 60-213 speaks of presenting a counterclaim in a *pleading*. It does not limit the inclusion of counterclaims to answers. It also speaks of including any claim against any opposing party—not just a claim against the plaintiff. Here, Mohr had a compulsory counterclaim to the Bank's cross-claim in the Airport case. He was advised of that by the trial judge in this case almost a month before the Airport case was dismissed. No reason for his failure to assert his claim in the Airport case has been presented here. We hold that Mohr's claim against the Bank on the two Mohr-Loyd Leasing checks was a compulsory counterclaim which had to be raised in the Airport case. They were not raised there, with the result that they may not now be raised in a separate action, but are barred. The judgment on those two checks and related relief must be reversed. We have not overlooked the Bank's other arguments in support of this issue, but we need not decide them in view of our holding, above set forth.

For its fourth point, the Bank claims that the trial court erred in refusing to give its requested instructions on actual and implied authority. Appellant presented the court with several requested instructions. In ruling on them, the trial judge deleted references to actual or implied authority, and refused to give two instructions requested by the Bank. Requested Instruction No. 4 suggests that there are three types of authority: actual, apparent, and implied. As we discussed earlier, implied agency is one of the types of actual agency. There are but two types, actual and apparent authority. The judge correctly declined to give proposed Instruction No. 4. There was no evidence of express agency, and the court was not required to instruct on it. As to implied agency, we stated in *Brown v. Wichita State University,* 217 Kan. 279, 287, 540 P.2d 66 (1975), quoted earlier, that "it is the manifestation of the alleged principal and agent as between themselves that is decisive . . . ." Here, the evidence indicated that Loyd concealed his conduct from the corporation. He was expressly authorized to endorse checks but only to deposit them in the corporate bank account. When his defalcations were discovered, Mohr confronted him and he promptly ran away. There is simply no evidence to support the theory that the corporation did anything that caused Loyd to believe that he had authority to deposit corporate checks in his personal bank accounts. In the absence of evidence to support the Bank's theory of implied agency, the trial court was not required to instruct on it.

Appellant contends that it was reversible error for the trial court to refuse to give its Requested Instructions Nos. 5 and 7. Requested Instruction No. 5 follows the language of K.S.A. 84-3-403(1). The trial court properly gave the substance of that section in its Instruction No. 8, tailoring the definition of agency to that of apparent agency, which was the issue submitted to the jury. The court did not err in refusing to give Instruction No. 5.

As to Requested Instruction No. 7, the first portion of the instruction discusses at length the subject of express and implied authority. As such, and for the reasons stated above, the instruction covers theories which were not supported by the evidence, and refusal to give it was not error.

The fifth issue raised by the Bank is its contention that the trial court erred in refusing to give its requested instructions on

preclusion by estoppel. The trial judge instructed the jury only regarding the affirmative defense of contributory negligence, and his instructions on that defense are not challenged on appeal. Estoppel, as we have noted earlier, requires evidence of detrimental reliance. Absent any evidence of reliance by the Bank on acts of the corporation, the trial court did not err in refusing to give the requested instructions on preclusion by estoppel. The Bank did not have any knowledge of Loyd's prior defalcations or embezzlements, and there was no evidence to suggest that it relied in any way on any acts or omissions of the corporation.

Appellant's sixth assignment of error concerns Instruction No. 12, in which the trial court told the jury:

"Barring exceptional circumstances, the general rule is that the failure of a bank to inquire when an individual deposits a check made payable to a corporation into the account of another person or entity is an unreasonable commercial banking practice.

"The burden of proof as to whether exceptional circumstances existed as to the checks in question is on the Defendant State Bank of Stanley.

"If you find that Defendant State Bank of Stanley failed to act in good faith and in accordance with reasonable commercial banking standards, you may not consider any negligence of the Plaintiffs which may have substantially contributed to the making of any unauthorized endorsement or deposit."

This instruction follows the opinion of the Court of Appeals in *Aetna Casualty and Surety Co. v. Hepler State Bank*, 6 Kan. App. 2d at 551, discussed earlier. The Bank claims that this instruction is erroneous for two reasons: (1) the factual differences remove the case at bar from this general rule, and (2) the instruction unduly emphasized the plaintiffs' expert testimony over that of the defendant's expert.

The Bank argues that in *Aetna*, the agent was a mere employee, while Loyd was a major stockholder, an officer, and a director of the corporation. The Bank's executive vice-president testified only that he knew that Loyd was a co-owner of Tri-County. The Bank's head cashier testified that he did not know the identity of Tri-County's officers, directors, or shareholders. The key issue in *Aetna* was not the position occupied by the employee, but the practice of allowing *an individual* to deposit checks payable to a corporation in an account other than the account of the designated corporate payee.

The second claimed factual distinction is that the employee in *Aetna* deposited the moneys into his *personal* account while Loyd deposited the moneys into a *business* account. The Earthborn account, however, was not the account of the corporate payee of the checks. Loyd was the only person authorized to sign checks on the Earthborn account, and for all practical purposes it was his personal account. Again, this was not the key factor in *Aetna*—it was the deposit of the moneys beyond the reach of the corporate payee into an account controlled by the individual. The type of account controlled by the individual was not a decisive factor in *Aetna*.

Plaintiffs' expert testified that the Bank's practice of permitting an individual to deposit checks, made payable to a corporation, in the individual's own account, was an unreasonable banking practice. The Bank's expert disagreed, and found this practice entirely reasonable. Though there was disagreement among the experts (and the Bank's expert seemed to disagree with his prior published writings on the subject), it was the function of the trial court to instruct the jury as to the applicable law. There was no disagreement over the facts of the case, and simply because an expert testifies that he disagrees with the appropriate law is no reason for the trial court to withhold a statement of the law from the jury. The Bank argues that the court's instruction emphasized one version of the facts over another. The instruction did not emphasize a disputed version of the facts; the facts were undisputed. The instruction only gave the jury a correct statement of the applicable legal principle. We find no error.

Appellant's sixth point on appeal is its contention that the trial court erred in its jury instruction on the measure of damages. The court instructed the jury that the measure of damages for conversion is presumed to be the face amount of each check which was converted "unless you find the amount of the item should be reduced by an amount which could not have been realized by the use of ordinary care."

K.S.A. 84-3-419(2) provides that in an action against a drawee for conversion, the measure of the drawee's liability is the face amount of the instrument. In any other action for conversion under 84-3-419(1), the measure of liability is presumed to be the face amount of the instrument. The Bank was not the drawee of

the eight checks, and this is not an action against the drawee; therefore, the presumption applies. The trial court's instruction as to the reduction by an amount which could not have been realized by the use of ordinary care appears to have been taken from portions of the U.C.C. dealing with negligence.

Though the instruction was erroneous, no objection was made to it at trial, and we do not find reversible error. There was no evidence that the checks, at the time of their conversion, were worth less than their face value. Although appellant argues that the instruction improperly limited the evidence which the jury might consider in fixing the value, appellant points only to evidence of later settlements by third parties with the drawer of the checks. This does not refute the presumption. The measure of damages for conversion is the market value of the converted property *on the date of conversion. Salem Development Co. v. Ross*, 251 Cal. App. 2d 53, 59 Cal. Rptr. 548 (1967); *PWA Farms v. North Platte State Bank*, 220 Neb. 516, 522, 371 N.W.2d 102 (1985); *Associated Bean Growers v. Chester B. Brown Co.*, 198 Neb. 775, 255 N.W.2d 425 (1977). The rule is stated in 18 Am. Jur. 2d, Conversion § 136, p. 241 as follows:

"The general measure of damages recoverable for the conversion of commercial paper is, as in other cases, the value of the property converted, plus interest thereon. Damages are to be measured by value *at the time of conversion.*" (Emphasis supplied.)

Further, in the discussion of damages recoverable for conversion under U.C.C. § 3-419, we find the following rule stated in 6 Anderson Uniform Commercial Code § 3-419:29 (3rd ed. 1984):

"The plaintiff in an action to recover for the conversion of commercial paper recovers the face amount as authorized by UCC § 3-419(2) and no reduction is to be made for indemnity received by the plaintiff from another source."

We conclude that under the evidence in this case, the instruction was not prejudicial or reversible error.

Also, the Bank contends that the court erred in instructing the jury the Bank had the burden to overcome the presumption that the measure of damages is presumed to be the face amount of the checks. We do not agree. The burden of persuading the jury that the damage sustained was less than the face value of the converted checks was properly imposed upon the Bank. This is the general rule. In 18 Am. Jur. 2d, Conversion § 173, p. 264, it is said:

"[A] defendant who claims the actual value [of commercial paper] to be less than the face value bears the burden of introducing evidence to show such fact."

As its eighth and final point, the Bank contends that the trial court erred in submitting the issue of punitive damages to the jury. The Bank argues, *inter alia*, that the evidence is insufficient to support a punitive damage award.

We recently discussed at length the rules relating to the allowance of punitive damages. See *Gould v. Taco Bell*, 239 Kan. 564, 722 P.2d 511 (1986); *Johnson v. Geer Real Estate Co.*, 239 Kan. 324, 327-28, 720 P.2d 660 (1986); *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 681 P.2d 1038, *cert denied* 469 U.S. 965 (1984). In summary, it may be said that punitive damages are allowed whenever the elements of fraud, malice, gross negligence, oppression, outrageous or vindictive conduct, intentional wrongdoing, or wanton invasion of the rights of the injured party are shown by the evidence. Punitive damages are awarded not because of any special merit in the injured party's case, but are imposed to punish the wrongdoer because of the grossness of his or her conduct, the purpose being to restrain and deter others from the commission of like wrongs.

The usual rules governing the allowance of punitive damages are applicable in conversion cases arising under the U.C.C. Thus, in *Sherrill White Const. v. South Carolina Nat. Bank*, 713 F.2d 1047 (4th Cir. 1983), it was held that while punitive damages may be recovered in an action for conversion by payment of checks over a forged endorsement if it is established that the bank acted with malice or with reckless indifference to the rights of the parties, punitive damages may not be recovered where at most the bank was merely negligent. The court said:

"[I]n order to recover punitive damages [in a conversion case] there must be more than mere conversion. There must be 'malice, ill will, a conscious indifference to the rights of others, or a reckless disregard thereof.'" 713 F.2d at 1051-52.

Finding no evidence except as to ordinary negligence on the part of the bank, the Fourth Circuit reversed the award as to punitive damages.

When a verdict is attacked for insufficiency of the evidence,

the duty of an appellate court extends only to a search of the record for the purpose of determining whether there is any substantial competent evidence to support the verdict. The appellate court will not weigh the evidence or pass upon the credibility of witnesses. The reviewing court must review the evidence in the light most favorable to the party prevailing below. *Borg Warner Acceptance Corp. v. Kansas Secretary of State*, 240 Kan. 598, 603, 731 P.2d 301 (1987); *Long v. Deere & Co.*, 238 Kan. 766, Syl. ¶ 1, 715 P.2d 1023 (1986).

James Loyd maintained a bank account for his oil company, Earthborn Energy, in the State Bank of Stanley. He deposited checks in that account which were made payable to Tri-County Farm Equipment Co. Loyd endorsed the checks on behalf of Tri-County without authority. The Bank did not inquire into his authority to endorse the checks and to deposit them in an account in which Tri-County, the payee, had no interest, but in which Loyd was the sole person authorized to sign checks.

There was evidence that Loyd's Earthborn account was frequently overdrawn, and the Bank made an effort to encourage Loyd to make deposits in the account and to keep it solvent. There was evidence that Loyd did certain favors for Bank officers, and that the Bank suspected Loyd of check-kiting. The suspected check-kiting, however, was not shown to involve the checks at issue here.

The acts of the Bank, in accepting the Tri-County checks for deposit and in crediting Loyd's personal business account with the proceeds, were negligent. Loyd, of course, profited from this activity. The Bank profited only in the sense that the deposit of these checks was of some help in covering Loyd's overdrafts on his personal business account. There is no showing that the Bank was aware of Loyd's actual and limited authority. Though the evidence is sufficient to support a finding of ordinary negligence against the Bank, we find no evidence which would support a finding of fraud, malice, gross negligence, oppression, outrageous or vindictive conduct, intentional wrongdoing, or wanton invasion of the rights of Tri-County. We hold that the evidence is insufficient to support an award of punitive damages.

The judgment in favor of Tri-County Farm Equipment Com-

pany and against the State Bank of Stanley in the amount of $186,615.06, being the amount of the eight checks, plus pre-judgment interest to date of judgment in the amount of $61,837.43, as allowed by the trial court, is affirmed. The judgment in favor of Tri-County for punitive damages of $76,000, and the judgment in favor of Gene R. Mohr in the total sum or $98,197.77, are reversed.