**In re FOX HILL OFFICE
INVESTORS, LTD.,
Debtor.**

**FOX HILL OFFICE INVESTORS,
LTD., Appellee,**

**v.**

**MERCANTILE BANK, N.A., Appellant,**

**v.**

**KROH BROTHERS
DEVELOPMENT CO., Appellee.**

No. 90–1074.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 10, 1990.

Decided Feb. 25, 1991.

David Wells, St. Louis, Mo., for appellant.

Timothy J. Sear, Kansas City, Mo., for appellees.

Before ARNOLD and FAGG, Circuit Judges, and McMILLAN,* Senior District Judge.

ARNOLD, Circuit Judge.

Mercantile Bank appeals from a District Court[1] judgment, affirming a decision of the Bankruptcy Court.[2] The Bankruptcy Court decision allows the debtor, the limited partnership Fox Hill Office Investors, to avoid Mercantile's claim based on a promissory note and mortgage executed by its general partner. We affirm.

Kroh Brothers Equity Company is a wholly owned subsidiary of Kroh Brothers Development Company and was the general partner of Fox Hill, a Kansas limited partnership. On November 5, 1985, John A. Kroh, Jr., president of Kroh Brothers Development, submitted a loan application to Mercantile in the name of Fox Hill for $300,000. Mr. Kroh indicated that the purpose of the loan was to reimburse another Kroh entity for tenant-finish and improvement expenditures on the Fox Hill Office Building, owned by Fox Hill. Although documents submitted with the loan application indicated that Fox Hill could not meet its payments on the loan, Mercantile approved the loan. On December 31, 1985, Kroh Brothers Equity executed a promissory note for $300,000 as the general partner of Fox Hill. As security for the loan, Kroh Brothers Equity executed a third mortgage on the Fox Hill Office Building, and Kroh

Brothers Development signed an unsecured guaranty. At the request of Jacob Mondschein, an officer of Kroh Brothers Equity, Mercantile did not record the mortgage. Mercantile deposited the loan proceeds into a Kroh Brothers Development account at Mercantile.

Fox Hill filed for bankruptcy on April 15, 1987. Both Mercantile and Kroh Brothers Development filed secured proofs of claim based on the mortgages they held on the Fox Hill Office Building. In September 1987, Fox Hill filed this adversary proceeding, seeking to avoid the Mercantile loan by claiming that Kroh Brothers Equity, its general partner, lacked the authority to execute the promissory note and mortgage on behalf of Fox Hill. In response to this action, Mercantile filed a third-party claim against Kroh Brothers Development, and asked the Bankruptcy Court to subordinate Kroh Brothers Development's claim to Mercantile's. After a trial, the Bankruptcy Court found in favor of Fox Hill and Kroh Brothers Development on all issues. 101 B.R. 1007. The District Court affirmed in all respects.

On appeal to this Court, Mercantile alleges several points of error. First, it claims the Bankruptcy Court erred by concluding that Kroh Brothers Equity lacked actual authority, either express or implied, to execute the promissory note and mortgage in favor of Mercantile.[3] In support of its claim of actual authority, Mercantile principally relies on sections 7.01, 7.02, and 7.08 of the Fox Hill limited partnership agreement.[4] While section 7.01 lends some sup-

---

\* The Hon. James B. McMillan, Senior United States District Judge for the Western District of North Carolina, sitting by designation.

1. The Hon. Scott O. Wright, United States District Judge for the Western District of Missouri.

2. The Hon. Karen M. See, United States Bankruptcy Judge for the Western District of Missouri.

3. Although not dispositive for purposes of this case, we note that this Court has previously determined the validity of loans made to other Kroh limited partnerships based on a partnership agreement containing the identical language at issue here. See *In re West Tech, Ltd.*, 882 F.2d 323 (8th Cir.1989).

4. Mercantile relies mainly on section 7.01. It provides, in part:

Persons dealing with the Partnership are entitled to rely conclusively on the power and authority of the General Partner as set forth in this Agreement. In no event shall any person dealing with the General Partner or the General Partner's representative with respect to any business or property of the Partnership be obligated to ascertain that the terms of this Agreement have been complied with, or be obligated to inquire into the necessity or expedience of any act or action of the General Partner or the General Partner's representative; and every contract, agreement, deed, mortgage, security agreement, promissory note or other instrument or document

port to Mercantile's claims of authority, particularly since it put no obligation on Mercantile to inquire into Kroh Brothers Equity's authority, we nevertheless conclude that Kroh Brothers Equity lacked actual authority.

█ The authority granted by section 7.01 is not sufficient to override the lack of authorization clearly apparent from other provisions of the partnership agreement. If the bank had relied on section 7.01 alone and known nothing of the rest of the limited partnership agreement, it would have a strong argument. But that was not the case. The bank had access to and reviewed the entire agreement, and other portions of it clearly negative the general partner's authority to incur the debt in question. Section 3.02(b) of the partnership agreement prohibits recourse loans by authorizing only financing "in which there is no personal liability of the General or Limited Partners." Because the promissory note failed to limit liability solely to the mortgage, the note was a recourse note, expressly prohibited by the partnership agreement. Moreover, depositing the funds into a Kroh Brothers Development bank account violated section 10.05 of the partnership agreement, which provides that "[p]artnership funds shall not be com[m]ingled with those of any other Person." The fact that Fox Hill did not have its own bank account in which to deposit the funds does not make this action less violative of the partnership agreement. Finally, section 5.05 prohibited the repayment of loans made to the partnership "until the Limited Partners' Adjusted Capital Contribution has been reduced to zero." The Bankruptcy Court found no evidence indicating that the limited partners had been repaid their capital contributions. This finding is not clearly erroneous. Thus, even if the loan proceeds were used to repay tenant-finish advances, as Kroh Brothers contends, such

repayment violated the partnership agreement.

█ Mercantile also claims that the Bankruptcy Court erred in concluding that Kroh Brothers Equity lacked actual authority because the loan was not for a valid partnership purpose. We disagree. Kansas statutory law in effect at the time the note and mortgage were executed provided that "without the written consent or ratification of the specific act by all the limited partners, a general partner or all of the general partners have no authority to ... assign their rights in specific partnership property, for other than a partnership purpose." Kan.Stat.Ann. § 56–130(1)(d) (repealed, effective Jan. 1, 1986).[5] The Bankruptcy Court found that the loan proceeds were used to meet Kroh Brothers Development's cash-flow needs, and that Fox Hill did not receive the benefit of the loan proceeds. That court also found that there was no evidence indicating Fox Hill owed any other Kroh entity money for improvements on the Fox Hill Office Building. These findings are not clearly erroneous, and indicate that Kroh Brothers Equity did not execute the promissory note and mortgage for a valid partnership purpose. Moreover, contrary to Mercantile's assertions, signing of the partnership agreement by the limited partners does not provide the required ratification or consent. The statute requires ratification "of the specific act," not a general consent embodied in the partnership agreement.

█ We also reject Mercantile's claim that Kroh Brothers Equity had implied authority. Under Kansas law, implied authority "arises when, from the statements and conduct of the parties, it appears that the principal, or the principal and the 'agent,' intended to make it appear to others that the acts of the 'agent' were authorized by the principal." *Mohr v. State Bank of Stanley*, 241 Kan. 42, 46, 734 P.2d

executed by the General Partner or General Partner's representative with respect to any business or property of the Partnership shall be conclusive evidence in favor of any and every person relying thereon.... Appendix tab 7, at 16.

5. We could not locate, and the parties do not cite, any Kansas case law construing this provision. We therefore interpret the statute according to its plain meaning. The parties cite cases from other jurisdictions construing similar statutes, but we do not find them persuasive.

1071, 1076 (1987). The mere fact that the limited partners delegated authority to Kroh Brothers Equity to act on their behalf does not mean that the limited partners granted Kroh Brothers Equity authority to borrow money that the partnership could not repay, and then deposit the loan proceeds into Kroh Brothers Development's account. Moreover, the fact that Kroh Brothers Equity provided Mercantile with documents indicating it had authority and Mondschein may have honestly believed he had authority is not conclusive. The agents' "intention[s] alone" are insufficient to establish "a finding of implied agency." 241 Kan. at 46, 734 P.2d at 1076.

■ Mercantile's next claim on appeal is that the Bankruptcy Court erred in concluding that Kroh Brothers Equity lacked the apparent authority to borrow money on behalf of and pledge the assets of Fox Hill. One of Mercantile's loan officers, Jacquelyn S. Rocchio, testified that she reviewed and had Mercantile's legal counsel review the agreement. Mercantile therefore had actual notice that the partnership agreement did not authorize Kroh Brothers Equity's actions. Even if Mercantile did not have a duty to examine the partnership agreement, once it did it was on notice as to all the agreement's provisions, not just Article VII.

Mercantile was also aware of other facts negating its claim of apparent authority. It knew Fox Hill could not repay the loan. Indeed, its own loan officer testified that at the time Mercantile processed the loan it knew it would have to look to sources other than Fox Hill for payment. It knew that Kroh Brothers Equity was the general partner, but nevertheless processed the loan request indicating that Kroh Brothers Development was the general partner. It also knew that a prior mortgage on the Fox Hill Office Building, held by Mutual Benefit Life Insurance Company, required Mutual Benefit's consent before any other mortgages could be taken out on the building. Yet, Mercantile agreed not to record the mortgage, for the manifest purpose of deceiving Mutual Benefit.

Mercantile's reliance on *Hubbard v. Home Federal Savings & Loan Ass'n*, 10 Kan.App.2d 547, 704 P.2d 399 (1985), is similarly misplaced. In *Hubbard,* the Kansas Court of Appeals held that a bank was not liable for a conservator's conversion of funds when the bank lacked actual or constructive knowledge (until it was too late) of the conservator's misappropriation of funds. Even if we assume Kansas courts would apply *Hubbard* to this kind of case, Mercantile cannot prevail. Since Mercantile had possession of the partnership agreement, it had actual knowledge that Kroh Brothers Equity lacked authority.

Mercantile's final claim on appeal is that the Bankruptcy Court erred in failing to subordinate Kroh Brothers Development's claim to its claim under the doctrine of equitable subordination. 11 U.S.C. § 510(c)(1). In view of our conclusion that Mercantile does not have a claim against Fox Hill, this argument must fail. There is no claim to which Kroh Brothers Development's mortgage could be subordinated.

Accordingly, the judgment of the District Court is affirmed.